IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| AL RAY SHOEMAKER | ) | |
| | ) | |
| v. | ) | CR. NO. 3:07cv112-MEF-CSC |
| | ) | |
| UNITED STATES OF AMERICA | ) | |

## UNITED STATES' RESPONSE TO § 2255 MOTION

COMES NOW the United States of America, by and through its attorney, Leura G.

Canary, United States Attorney, and, in compliance with this Court's order, responds to

Defendant/Movant Al Ray Shoemaker's Motion Under § 2255 to Vacate, Set Aside, Or Correct

Sentence By a Person In Federal Custody, as follows:

## I. PROCEDURAL HISTORY AND RELEVANT FACTS

On June 29, 2005, a grand jury for the Middle District of Alabama returned a five-count

indictment against Al Ray Shoemaker ("Shoemaker"), d/b/a Al's BP, and co-defendants Brenda

McCall, Martha Davis, and Kelly LNU.[1]  See Attachment A, the indictment.  Count 1 of the

Indictment charged that, beginning in and about June 2000, and continuing to on or about May 1,

2003, the exact dates being unknown to the Grand Jury, in Geneva County, Alabama, and

elsewhere, the defendants knowingly and willfully combined, conspired, confederated, and

agreed together and with persons known and unknown to manufacture five grams or more of

methamphetamine, a Schedule II Controlled Substance, in violation of 21 U.S.C. § 841(a)(1) and

§ 846.  Counts 2 and 3 of the indictment charged that, on April 10, 2003, and April 17, 2003, Al

---

[1]        The charges against Kelly LNU were dismissed.

Ray Shoemaker and Brenda McCall, while aiding and abetting each other and others known and unknown to the Grand Jury, knowingly and intentionally possessed and distributed pseudoephedrine, a Schedule I listed chemical, knowing and having reasonable cause to believe that the listed chemical would be used to manufacture a controlled substance, in violation of 21 U.S.C. §841(c)(2) and 18 U.S.C. § 2.  Count 4 of the indictment charged that, on April 22, 2003, Al Ray Shoemaker and Martha Davis, while aiding and abetting each other and others known and unknown to the Grand Jury, knowingly and intentionally possessed and distributed pseudoephedrine, a Schedule I listed chemical, knowing and having reasonable cause to believe that the listed chemical would be used to manufacture a controlled substance, in violation of 21 U.S.C. §841(c)(2) and 18 U.S.C. § 2.  Count 5 of the indictment charged that, on May 1, 2003, Al Ray Shoemaker and Kelly LNU, while aiding and abetting each other and others known and unknown to the Grand Jury, knowingly and intentionally possessed and distributed pseudoephedrine, a Schedule I listed chemical, knowing and having reasonable cause to believe that the listed chemical would be used to manufacture a controlled substance, in violation of 21 U.S.C. § 841(c)(2) and 18 U.S.C. § 2.  The indictment also contained a forfeiture allegation.

On October 28, 2005, a one-count felony information was filed against Al Ray Shoemaker (Doc. 51).  See Attachment B, the felony information.  The information charged that, beginning on and about April 10, 2003, and continuing to on or about May 1, 2003, in Geneva County, Alabama, within the Middle District of Alabama, the defendant, while aiding and abetting others known and unknown, in violation of this subchapter, namely, 21 U.C.S. § 841(c)(2), knowingly distributed a listed chemical, to-wit: pseudoephedrine, other than in violation of a record-keeping and reporting requirement of Section 830 of Title 21, in violation of

21 U. S.C. § 841(f)(1) and 18 U.S.C. § 2.  The information also contained a forfeiture allegation.

On November 2, 2005, Shoemaker signed a waiver of indictment and agreed to enter a plea to the information pursuant to a plea agreement.  See Attachment C, the plea agreement and Attachment D, the waiver of indictment.

The plea agreement informed Shoemaker that, in return for pleading guilty to knowingly distributing a listed chemical other than in violation of a record-keeping and reporting requirement of Section 830 of Title 21, in violation of 21 U. S.C. § 841(f)(1) and 18 U.S.C. § 2, he would receive a sentence of not less than 3 years (36 months) and not more than 5 years (60 months).  Attachment C, at 2.  The parties agreed that there were no other motions for a downward departure applicable in this case.  Id.  The parties also agreed that if the defendant filed a motion for downward departure, or should the Court in its discretion using the United States Sentencing Guidelines as advisory, sentence Shoemaker below 3 years, the plea agreement would become void.  Id. at 2-3.  In addition, the agreement provided Shoemaker an opportunity to provide substantial assistance to the United States and law enforcement in order to receive a motion for a downward departure under U.S.S.G. § 5K1.1 and  Fed. R. Crim. P. 35.  Id. at 3-4.  However, a motion for downward departure based upon substantial assistance could not reduce the defendant's sentence below 3 years.  Id. at 3.  The agreement also provided that, absent circumstances involving prosecutorial misconduct or ineffective assistance of counsel, Shoemaker waived both his right to appeal his conviction or sentence, and his right to seek collateral relief.  Id. at 4.  The agreement contained a factual basis for the plea, wherein Shoemaker acknowledged that, between April 10, 2003 and May 1, 2003, while aiding and abetting persons known and unknown, he sold 111 bottles of pseudoephedrine to a cooperating

individual in Geneva County, Alabama.  Shoemaker also acknowledged that each bottle

contained 36 tablets, and each tablet contained 60 milligrams of pseudoephedrine that he knew or

had reason to believe would be used to manufacture methamphetamine.  Id. at 4-5.

Shoemaker's guilty plea hearing was conducted on November 2, 2005.  See Attachment

E, a transcript of change of plea hearing.  Shoemaker was placed under oath and the hearing

commenced.  Attachment E, at 2.  At the outset of the hearing, Shoemaker consented to have his

guilty plea taken by a United States Magistrate Judge. Id. at 3.  Shoemaker was informed that

although he was being charged by way of an information, he had the right to have a grand jury

consider the charge and be charged with the criminal offense by an indictment.  Id. at 4-5.

Shoemaker acknowledged that he had discussed being charged by information, then waived his

right to be charged by a grand jury.  Id. at 4-5.  Before proceeding further, the Court asked

Shoemaker was he satisfied with "Mr. Holmes' representation of [him] in this case."  Id. at 5.

Shoemaker replied, "[a]bsolutely."  Id.   The Court verified that Shoemaker read the plea

agreement before signing it.  Id. at 6.   In spite of Shoemaker stating under oath that he had read

the plea agreement, the Court advised Shoemaker that the plea agreement was not binding on the

Court.  Id.   Shoemaker was informed that he faced a maximum statutory sentence of five years, a

fine of not more than two hundred fifty thousand dollars, or both a fine and imprisonment and

not more than three years supervised release after being released from any imprisonment.  Id. at

7-8.  Shoemaker acknowledged that he had discussed the sentencing guidelines with his attorney,

that he knew the guidelines were no longer mandatory, and that parole had been abolished.  Id. at

8.

The Court then addressed the waiver provisions of Shoemaker's plea agreement.  The Court asked Shoemaker whether he understood that he was "giving up [his] right to appeal any sentence which is imposed on [him] or otherwise attack any sentence with the exception of prosecutorial misconduct or ineffective assistance of counsel."  Attachment E, at 8-9.  Shoemaker responded affirmatively to his question.  Id. at 9.

Next, after ensuring that Shoemaker understood the rights that he would be relinquishing by pleading guilty (Attachment E, at 9-10), the Court reviewed the allegations in the one-count information and explained those things that the United States would have to prove if a trial was held in his case.  Id. at 10.  The undersigned Assistant United States Attorney and Shoemakers's defense counsel, David Holmes, asked Shoemaker questions contained in the factual basis of the plea agreement during the plea colloquy.  Id. at 11-23.  Shoemaker acknowledged that he owned and operated Al's BP in Geneva County, Alabama, (Attachment E, at 11), where he had other employees working with and for him (Id.), and that he and his employees sold a hundred and eleven bottles of pseudoephedrine referred to as pseudo sixties (Id. at 11-12).  Shoemaker also admitted that although he did not do the ordering, he owned Al's BP, he stocked and sold the ephedrines from his store.  Id. at 12.  Shoemaker admitted that each bottle (pseudo sixties) contained thirty-six tablets and some of them contained thirty milligrams of ephedrine.  Id. at 12.  Shoemaker ultimately acknowledged that he should have known that the pseudoephedrine was being used to manufacture methamphetamine.  Id. at 23.   The parties stipulated that the offense took place in Geneva County within the Middle District of Alabama.  Id. at 12.

After finding that Shoemaker was fully competent and capable of entering an informed plea, that he was aware of the nature of the charges and the consequences of the plea, that the

plea was knowing and voluntary, and supported by an independent factual basis containing each of the essential elements of the offense, the Court accepted her plea of guilty. Attachment E, at 25.

A presentence investigative report was ordered and was prepared by the United States Probation Office in this case. See Presentence Investigative Report ("PSR"), Under Seal. The report calculated a total offense level of 29 (PSR, at ¶ 29), and a criminal history category of I (PSR at ¶ 33), resulting in a guidelines range of imprisonment from 87 to 108 months. PSR at ¶ 51. Because the statutory maximum sentence is less than the minimum guidelines range, pursuant to U.S.S.G. § 5G1.1(a), the statutory maximum shall become the guidelines sentence. PSR ¶ at 51.

A sentencing hearing was held on February 7, 2006. See Attachment F, transcript of the sentencing hearing. The transcript reflects that Shoemaker, through his defense counsel, confirmed to the Court that Shoemaker had no objections to the report. Attachment F, at 2 and 6. The Court adopted the factual statements contained in the presentence report, made specific findings that the guidelines offense level was 29, and the criminal history category was I, and the advisory guidelines range was 60 months. Id. at 7. The Court, the government, and defense counsel engaged in an exchange regarding whether a motion for a downward departure had been filed on behalf of Shoemaker. Id. at 7. Concluding that a downward departure would not be filed in this case, the Court granted the government's motion crediting Shoemaker with an additional point for acceptance of responsibility and proceeded with the sentencing. Id. at 6. The Court had this to say about whether or not a motion for downward departure is filed pursuant to 5K1.1 of the guidelines,

"Congress has stated that [it] is the prerogative available only to the United States, and not available to the Court, and the Court respects that prerogative."

Id. at 13.

The Court then asked Shoemaker whether he had anything else to say (Id. at 16). Shoemaker responded negatively. Id.

The Court considered the nature of the offense, the seriousness of the offense and factors outlined in 18 U.S.C. § 3553 in determining a reasonable sentence, and sentenced the defendant to 48 months imprisonment, two years supervised release, a $100 assessment fee and waived imposition of a fine due to the defendant's inability to run his business. Id. 17. The Court also advised Shoemaker that he had waived his right to appeal as part of his plea agreement, and to the extent he believes his waiver is not enforceable, he had ten days in which to appeal. Id. at 18. The Court specifically made a finding that the sentence was reasonable based upon the seriousness of the offense, a need to promote respect for the law, to provide just punishment , to afford adequate deterrence to criminal conduct, and to protect the public from any further crime by Shoemaker. Id. at 18. Finally, the Court made a finding that to sentence Shoemaker to any lesser sentence would be "insufficient to accomplish the purposes set forth in 18 United States Code Section 3553(a)(2)." Id. Both parties state that there were no objections to the sentence imposed or the manner in which the Court pronounced the sentence. Id. The sentencing hearing concluded and judgment was entered in Shoemaker's case on February 7, 2006.

Shoemaker did not appeal his conviction or sentence. On February 6, 2007, Shoemaker filed a Memorandum Of Law In Support Of Motion to Vacate, Set Aside or Correct Sentence By A Person In Federal Custody Pursuant To 28 U.S.C. Section 2255. (Doc. #2). On February 7,

7

2007, this Court entered an order directing the United States to respond within thirty (30) days.

(Doc. #3). The United States requested and received an extension of time to receive the

remaining relevant transcript. (Docs. #5 and #6). The Court also ordered David Franklin

Holmes to "file with the court an affidavit that addresses the claims of ineffective assistance of

counsel presented against him in the § 2255 motion." (Doc. #3, p. 3). The United States now

files this response to Shoemaker's § 2255 motion.

## II. CLAIMS RAISED IN THE § 2255 MOTION

Shoemaker has raised the following issues in his § 2255 motion:

1.  Counsel provided ineffective assistance due to his failure to apprise the court of
    Shoemaker's possible risk of developing cancer which resulted in the Court imposing a
    sentence based upon misinformation and ignorance of acts material to the mitigation of
    Shoemaker's sentence.

2.  Counsel provided ineffective assistance due to his failure to secure a downward departure
    based upon Shoemaker's purported substantial assistance and <u>United States v. Booker</u>.

## III. RESPONSES TO CLAIMS FOR RELIEF

## A. <u>Shoemaker's Petition Is Barred Because He Waived His Right To Seek Relief Under 28 U.S.C. § 2255 When He Entered His Guilty Plea.</u>

Shoemaker agreed to waive his right to appeal and collaterally attack his sentence in any

post-conviction proceeding during his guilty plea hearing on November 2, 2005. <u>See</u> Attachment

E at 9. The Court specifically questioned Shoemaker as to whether he understood that his plea

agreement waived his ability to appeal and collaterally attack his sentence, and he stated under

oath that he understood this provision. <u>Id.</u> Shoemaker also acknowledged that before signing

the plea agreement, he had an opportunity to read it and to discuss the terms of the agreement

with his attorney, Mr. Holmes. <u>Id.</u> at 6. In addition, the sentencing judge advised Shoemaker

that he had the right to appeal the sentence imposed within ten days if he believed the sentence was in violation of law. Attachment F, at 18. Notwithstanding the right to appeal, the sentencing judge explained to Shoemaker that he had waived his rights and "waivers are generally enforceable." Id. After explaining the affect of a waiver in the plea agreement, the Court asked Shoemaker if he had any questions. Shoemaker responded, "I have no questions." Id. at 19.

To the extent that Shoemaker is attempting to attack his sentence, the Eleventh Circuit views Shoemaker's waiver of right to seek relief under § 2255 as a contract between the United States and a criminal defendant.

> [A]mong the considerations that a defendant may offer as part of such a contract is waiver of his right to appeal, provided that the waiver is made knowingly and voluntarily. See United States v. Bushert, 997 F.2d 1342, 1350 (11th Cir. 1993). In this case, [the appellant's] waiver was clearly knowing and voluntary–he was specifically questioned by the district court regarding the waiver of his right to appeal. See United States v. Buchanan, 131 F.3d 1005, 1008 (11th Cir. 1997). The plea agreement is therefore enforceable and would appear to bar this challenge.

United States v. Howle, 166 F.3d 1166, 1168 (11th Cir. 1999).

Moreover, "[a] defendant's waiver of the right to appeal 'directly or collaterally' encompasses his right to challenge his sentence in a section 2255 proceeding." Velazques v. United States, 2006 WL 3694641 (M.D.Fla,), See Williams v. United States, 396 F.3d 1340, 1342 (11th Cir. 2005), (although the Eleventh Circuit has not addressed whether a sentence-appeal waiver includes the waiver of the right to challenge the sentence collaterally in the context of a § 2255 petition asserting ineffective assistance of counsel, every Circuit to have addressed the issue has held that a valid sentence-appeal waiver, entered into voluntarily and knowingly, pursuant to a plea agreement, precludes the defendant from attempting to attack, in a collateral

9

proceeding, the sentence through a claim of ineffective assistance of counsel during sentencing.).

The Eleventh Circuit has also stated that "a waiver of the right to seek federal habeas review must be 'an intentional relinquishment or abandonment of a known right,' the right to federal habeas review." Allen v. Thomas, 161 F.3d 667, 670 (11th Cir. 1998). The record demonstrates that the Court ascertained that Shoemaker's assent to the terms of his lea agreement was knowing and voluntary. Attachment E, at 9  Shoemaker's § 2255 motion is procedurally barred from review by this Court.

**B.    Shoemaker Has Met the One-Year Statute of Limitation Deadline For The Filing of Claims Under 28 U.S.C. § 2255.**

In the event this Court finds that Shoemaker's waiver of his right to seek relief under 28 U.S.C. § 2255 is unenforceable, the United States notes that he has filed his motion in a timely manner under paragraph six of 28 U.S.C. § 2255, which provides a one-year period of time within which to file a motion under the rule. The applicable provision in this case requires that a movant file his § 2255 motion within one year from the "date on which the judgement of conviction became final."

Shoemaker was sentenced on February 7, 2006. Shoemaker did not appeal his sentence to the Eleventh Circuit Court of Appeals. His sentence became final when the time for filing an appeal to the Eleventh Circuit expired. Although not specifically addressing the application of the statute of limitations to the 10-day notice of appeal requirement, the Eleventh Circuit has held that a judgment of conviction becomes final for someone who appeals to an appellate court when the time for seeking certiorari review in the Supreme Court expires. See Kaufman v. United States, 282 F.3d 1336, 1337-39 (11th Cir. 2002). Likewise, a judgment of conviction becomes

10

final for someone who does not appeal when the time for seeking the appeal expires. Shoemaker

had ten days from the February 7, 2006, entry of judgment by this Court to seek review by the

Eleventh Circuit; of his judgment of sentence, therefore, became final on February 17, 2006.

Therefore, under § 2255, Shoemaker had until February 19, 2007, the first business day after one

year from February 17, 2007, to file his § 2255 motion. He filed his motion on February 6, 2007.

It is, therefore, timely.

**C.    Shoemaker's Ineffective Assistance of Counsel Claims Should Be Denied Because They Are Without Merit**

Shoemaker presents two claims of ineffective assistance of counsel: (1) that counsel

failed to apprise the court of Shoemaker's risk of developing cancer which resulted in the Court

imposing a sentence based upon misinformation and ignorance of acts material to the mitigation

of Shoemaker's sentence; (2) that counsel failed to secure a downward departure

based upon Shoemaker's purported substantial assistance and United States v. Booker.  The

United States responds that these claims are waived under Shoemaker's plea agreement, as he

has not demonstrated ineffective assistance in any respect as to these claims.

To succeed on a claim of ineffective assistance of counsel, a defendant must prove both

that his counsel's performance was deficient and that the deficient performance prejudiced his

case. Strickland v. Washington, 466 U.S. 668, 694 (1984); see also Bell v. Cone, 535 U.S. 685,

697-98 (2002) (reaffirming the Strickland v. Washington standard for reviewing ineffective

assistance of counsel claims); Caderno v. United States, 256 F.3d 1213, 1217 (11th Cir. 2001)

(applying two-part test of Strickland v. Washington).  More specifically, Shoemaker must show

that (1) identified acts or omissions of counsel fell below an objective standard of

11

reasonableness, and (2) that his counsel's alleged errors or omissions resulted in prejudice to him to such an extent that, without counsel's alleged errors or omissions, there is a reasonable probability that the outcome of his [sentence] would have been different.  Yordan v. Dugger, 909 F.2d 474, 477 (11th Cir. 1990).

In analyzing counsel's performance under the performance prong of Strickland, this Court must presume that the conduct of counsel was reasonable, Yordan v. Dugger, 909 F.2d at 477.  A "[d]efendant must prove deficient performance by a preponderance of competent evidence, and the standard is 'reasonableness under prevailing professional norms.'"  Gallo-Chamorro v. United States, 233 F.3d 1298, 1303-04 (11th Cir. 2000)(footnotes omitted).  The Eleventh Circuit has described a defendant's burden with regard to the deficient performance prong of an ineffective assistance of counsel claim as follows:

> Because there is such a wide range of constitutionally acceptable performance, a petitioner seeking to rebut the presumption of adequate performance must bear a heavy burden:
>
>> The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done.  We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial. ...  We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.
>
> ...  Thus, in order to show that counsel's performance was unreasonable, the petitioner must establish that *no competent counsel would have taken the action that his counsel did take....*

Grayson v. Thompson, 257 F.3d 1194, 1216 (11th Cir. 2001) (internal citations omitted).

The Eleventh Circuit has described a defendant's burden in demonstrating that his counsel's deficient performance prejudiced his case as "high,"noting that it is not enough to show

that any errors had some conceivable effect on the outcome of the proceeding.  Robinson v.

Moore, 300 F.3d 1320, 1343-44 (11th Cir. 2002).  To succeed on the ineffective assistance of

counsel claim, the defendant must show that, but for counsel's unprofessional errors, the

outcome of the proceeding would have been different.

As the Eleventh Circuit has noted, "[i]t is well established that a habeas petitioner must

demonstrate both deficient performance and prejudice, and that a failure to demonstrate either

prong constitutes a failure to demonstrate ineffective assistance of counsel."  Bottoson v. Moore,

234 F.3d 526, 532 (11th Cir. 2000); accord, Robinson v. Moore, 300 F.3d at 1343.  In raising

ineffective assistance of counsel, Shoemaker has failed to plead facts sufficient to demonstrate

that he was prejudiced by any of counsel's actions.  For that reason, his § 2255 motion should be

summarily dismissed.

**1.    Counsel was not ineffective for failing to apprise the court of Shoemaker's possible
        risk of developing cancer, which had no bearing on the Court's imposition of
        sentence.**

In response to this Court's order, defense attorney David F. Holmes ("Holmes") filed an

affidavit to respond to Shoemaker's § 2255 motion.  See Attachment G, affidavit of David F.

Holmes.  Holmes stated that he had "no independent recollection of being informed of Mr.

Shoemaker's prior surgery" and his file does not reflect any information concerning Shoemaker's

prior surgery.  Attachment G, at 1.  Holmes also affirmed that because of he had "absolutely no

knowledge of the correlation of prior surgery for diverticulitis and the subsequent onset of

cancer," he would not have had Shoemaker examined for "an illness that was supposely cured

over 2 years prior to his sentencing."  Id. at 2.  Although Holmes had no prior knowledge of

Shoemaker's prior surgery, Holmes did advise Shoemaker to inform the Probation Officer of any

possible health issues that he had. Id. The PSR does not reference any prior surgeries. During the interview process, the PSR provides three opportunities to a defendant to inform the Probation Officer information concerning physical condition, and mental and emotional health. PSR ¶ ¶ 40, 41. On two separate occasions, Shoemaker and his attorney provided information to the Probation Officer and the Court that Shoemaker "suffers from a hearing loss and uses hearing aids." PSR ¶ 40; Attachment E, at 2; and Attachment F, at 3. Shoemaker also informed the Probation Officer that he has glaucoma in his left eye, hypertension, and high cholesterol, and the treatment for each diagnosis. PSR ¶ 40. The Probation Officer was so conscious of Shoemaker's condition that he noted in ¶ 41 that Shoemaker was "very emotional while discussing [his] case," and in ¶ 18 that Shoemaker "was very emotional while discussing the instant offense, and appears very remorseful." It is clear from the complete record of proceeding surrounding Shoemaker's criminal case, that he never mentioned his prior surgery. Certainly, Shoemaker was in the best position to know his prior medical history. Notwithstanding Shoemaker's past medical history, which he was well aware of, Shoemaker knowingly and voluntarily agreed to accept a plea bargain that was most advantageous to him. See PSR ¶ 51, (absent the plea agreement, the guidelines range of imprisonment was 87 to 108 months, Zone D). Moreover, whether or not a medical examination would have revealed cancer that was not discovered until approximately nine months into his imprisonment is highly speculative. Defendant has failed to show that Holmes was ineffective since Holmes had no knowledge of Shoemaker's prior surgery and could not have connected the prior surgery to Shoemaker's present cancer. This claim is without merit.

**2.____Counsel provided ineffective assistance due to his failure to secure a downward departure based upon Shoemaker's purported substantial assistance and United States v. Booker.**

Shoemaker was well aware that by entering a plea agreement to the felony information, the maximum sentence he could receive would be 60 months, two years less than the minimum guidelines calculation. Attachment E, at 7; PSR ¶ 51.  Shoemaker claims that he would have been better off not entering an 11(c)(1)(C) plea agreement because the Court, using its discretion, "should have and could have" sentenced him "considerably less" based upon United States v. Booker, 543 U.S. 220 (2005).  (Doc. 2, p. 2).

At the beginning of the sentencing hearing, the sentencing judge stated the following,

> Mr. Shoemaker, today the Court will determine a reasonable sentence in your case by considering the United States Sentencing Guidelines which are promulgated pursuant to the Sentencing Reform Act of 1984, and which are now advisory, and by considering the factors set forth in 18 United States Code, Section 3553(a).  It appears after the Court's review of the file in this case that you and your attorney have reached a plea of guilty and an agreement with the United States pursuant to the terms of Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure.

Attachment F, at 3.

The Court explained to Shoemaker that it was the Court's intention to accept the plea agreement.  Attachment F, at 6.  It is abundantly clear from the record in this case that the Court knew that the guidelines were advisory, and that the Court considered the advisory guidelines (Id. at 16), the applicable statutory factors under §3553(a) (Id. at 16, 18), and the facts of this case (Id. at 18).  See Booker at 543 U.S. 246, 261-64 (rendering federal sentencing guidelines advisory, and thereafter imposing a "reasonableness" standard in sentencing).  Finally, the Court made a finding that the sentence was reasonable.  Id.  The Court concluded  that to sentence

Shoemaker to any lesser sentence would be "insufficient to accomplish the purpose set forth in 18 United States Code Section 3553(a)(2)." Id. The district court was well aware of its discretion under the Booker decision and specifically stated it on the record. In addition, Counsel argued that (1) Shoemaker provided substantial assistance (Id. at 9); (2) Shoemaker made little profit from his sale of pseudoephedrine (Id. at 10); and (3) that the Court could sentence Shoemaker from 36 months to 60 months without voiding the plea agreement (Id. at 5). Finally, the Court did not sentence Shoemaker based upon misinformation and confusion. Therefore, Counsel was not inadequate or ineffective for failing to remind the Court that the sentencing guidelines were no longer binding, and this claim of ineffective assistance should be dismissed.

3.    **Shoemaker's Illness Is Not Extraordinary So As To Warrant A Downward Departure Or Reduction in Sentence.**

Shoemaker complains that he is terminally ill and should therefore receive a reduction in his sentence based upon his diagnosis of cancer. The government views Shoemaker's request for release as a downward departure or reduction in sentence.

Shoemaker's illness is an administrative issue for the Bureau of Prisons ("BOP") and does not warrant downward departure of his sentence. Moreover, this Court can only reduce Shoemaker's sentence pursuant to Crim.R. 35, Federal Rules of Criminal Procedure, based upon substantial assistance to the government. The issue of substantial assistance has already been resolved by this Court when it acknowledged that it is the prerogative available only to the United States to file a motion for downward departure. Attachment F, at 13. Therefore this issue is moot since the United States did not find that Shoemaker provided substantial assistance pursuant to Rule 35.

16

Shoemaker's illness is unfortunate, and the BOP has made provisions to address terminally ill inmates. Certainly, the provisions may not be the ultimate desire of any inmate similarly situated. However, to maintain fairness in the treatment of all terminally ill inmates, the BOP has a provision for "compassionate release." Shoemaker was transferred from Maxwell Federal Prison in Montgomery, Alabama, to the Federal Medical Center at Butner, North Carolina in order to provide Shoemaker with the best possible treatment. (Doc. #2, Exhibits 1-5). Shoemaker made application for a Compassionate Release based upon his illness, the request was denied. (Doc. #2, Exhibit 8). Dr. W.Abe Andes stated that Shoemaker was not a good candidate for Compassionate Release since Shoemaker is expected to live longer than 6 months. It should be noted that Shoemaker initially refused treatment as indicated in Exhibit 8, of Doc. #2. Dr. Andes concluded that with therapy, Shoemaker could "live a lot live longer". Doc. #2, Exhibits 8 and 9. The request for Compassionate Release pursuant to 18 U.S.C. §3582(c)(1)(A), is an administrative Remedy, the denial of which is appealable through the Administrative Remedy process. Doc. #2, Exhibit 10. There is nothing in the record that indicates Shoemaker has taken advantage of his Administrative Remedy process. This Court is not the proper avenue to seek reconsideration of Shoemaker's Compassionate Release request.

Shoemaker has failed to show in any of his ineffective assistance allegations that (1) identified acts or omissions of counsel fell below an objective standard of reasonableness, and (2) that his counsel's alleged errors or omissions resulted in prejudice to him to such an extent that, without counsel's alleged errors or omissions, there is a reasonable probability that the outcome of his proceeding would have been different. Yordan v. Dugger, 909 F.2d at 477. Therefore these claims should be denied.

### IV. A HEARING IS NOT APPROPRIATE IN THIS MATTER

Shoemaker has not pleaded facts or presented sufficient evidence or argument which, if true, show that he is entitled to an evidentiary hearing, and his claims for relief should be denied without an evidentiary hearing. See Blacklidge, v. Allison, 431 U.S. 63, 73-74 (1977); Tejada v. Dugger, 941 U.S. 1551, 1559 (11th Cir. 1991); United States v. Leatividal-Gonzalez, 939 F.2d 1455, 1465 (11th Cir. 1991). Should this Court determine that Shoemaker has made any arguments not addressed in this response, the United States would request the opportunity to further respond to those arguments.

### V. CONCLUSION

For the above reasons, Defendant/Movant Al Ray Shoemaker has failed to demonstrate that he is entitled to any relief from this Court, and his § 2255 motion should be denied without an evidentiary hearing.

Respectfully submitted on this the 29th day of March, 2007.

LEURA G. CANARY
UNITED STATES ATTORNEY


/s/Tommie Brown Hardwick
TOMMIE BROWN HARDWICK
One Court Square, Suite 201
Montgomery, AL 36104
Phone: (334) 223-7280
Fax: (334) 223-7135
E-mail: tommie.hardwick@usdoj.gov
ASB4152 W86T

**IN THE DISTRICT COURT OF THE UNITED STATES**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **AL RAY SHOEMAKER** | **)** | |
| | **)** | |
| **v.** | **)** | **CV. NO. 3:07cv112-MEF-CSC** |
| | **)** | |
| **UNITED STATES OF AMERICA** | **)** | |

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on March 29, 2007, I electronically filed the foregoing with the Clerk

of the Court using the CM/ECF system which will send notification of such filing to David F.

Holmes, Esq. and Susan G. James, Esq.

Respectfully submitted,

/s/Tommie Brown Hardwick
TOMMIE BROWN HARDWICK
One Court Square, Suite 201
Montgomery, AL 36104
Phone: (334)223-7280
Fax: (334)223-7135
E-mail: tommie.hardwick@usdoj.gov
ASB4152 W86T

# ATTACHMENT  A

FILED

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

JUN 2 9 2005

CLERK
U.S. DISTRICT COURT
MIDDLE DIST. OF ALA.

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| | ) CR. NO. *1:05 CR 153-F* |
| v. | )     [21 USC 846; |
| | )     21 USC 841(a)(1); |
| AL RAY SHOEMAKER, d/b/a | )     21 USC 841(c)(2); |
| AL'S BP, | )     18 USC 2] |
| BRENDA MC CALL, | ) |
| MARTHA DAVIS, and | ) |
| KELLY LNU | )   INDICTMENT |

The Grand Jury charges:

COUNT 1

Beginning in and about June 2000, and continuing to on or about May 1, 2003, the exact

dates being unknown to the Grand Jury, in Geneva County, Alabama, within the Middle District of

Alabama and elsewhere,

AL RAY SHOEMAKER, d/b/a
AL'S BP,
BRENDA MCCALL, and
MARTHA DAVIS,

defendants herein, did knowingly and willfully combine, conspire, confederate and agree together

with other persons known and unknown to manufacture five grams or more of methamphetamine,

a Schedule II controlled substance. All in violation of Title 21, United States Code, Sections

841(a)(1) and 846.

COUNT 2

On or about April 10, 2003, in Geneva County, Alabama, within the Middle District of Alabama,

AL RAY SHOEMAKER, d/b/a
AL'S BP, and
BRENDA MCCALL,

defendants herein, while aiding and abetting each other and others known and unknown to the Grand Jury, did knowingly and intentionally possess and distribute pseudoephedrine, a Schedule I listed chemical, knowing and having reasonable cause to believe that listed chemical would be used to manufacture a controlled substance, in violation of Title 21, United States Code, Section 841(c)(2), and Title 18, United States Code, Section 2.

COUNT 3

On or about April 17, 2003, in Geneva County, Alabama, within the Middle District of Alabama,

AL RAY SHOEMAKER, d/b/a
AL'S BP, and
BRENDA MCCALL,

defendants herein, while aiding and abetting each other and others known and unknown to the Grand Jury, did knowingly and intentionally possess and distribute pseudoephedrine, a Schedule I listed chemical, knowing and having reasonable cause to believe that the listed chemical would be used to manufacture a controlled substance, in violation of Title 21, United States Code, Section 841(c)(2), and Title 18, United States Code, Section 2.

COUNT 4

On or about April 22, 2003, in Geneva County, Alabama, within the Middle District of Alabama,

2

AL RAY SHOEMAKER, d/b/a
AL'S BP, and
MARTHA DAVIS,

defendants herein, while aiding and abetting each other and others known and unknown to the Grand Jury, did knowingly and intentionally possess and distribute pseudoephedrine, a Schedule I listed chemical, knowing and having reasonable cause to believe that the listed chemical would be used to manufacture a controlled substance, in violation of Title 21, United States Code, Section 841(c)(2), and Title 18, United States Code, Section 2.

<u>COUNT 5</u>

On or about May 1, 2003, in Geneva County, Alabama, within the Middle District of Alabama,

AL RAY SHOEMAKER, d/b/a
AL'S BP, and
KELLY LNU,

defendants herein, while aiding and abetting each other and others known and unknown to the Grand Jury, did knowingly and intentionally possess and distribute pseudoephedrine, a Schedule I listed chemical, knowing and having reasonable cause to believe that the listed chemical would be used to manufacture a controlled substance, in violation of Title 21, United States Code, Section 841(c)(2), and Title 18, United States Code, Section 2.

**Forfeiture Allegation**

A.      Counts 1 through 5 of this indictment are hereby repeated and incorporated herein by reference.

B.      Upon conviction for violation of Title 21, United States Code, Sections 841 and 846 as alleged in Count 1 the defendants,

AL RAY SHOEMAKER, d/b/a AL'S BP,
BRENDA MCCALL, and
MARTHA DAVIS,

shall forfeit to the United States pursuant to Title 21, United States Code, Section 853, any and all property constituting or derived from any proceeds the said defendants obtained directly or indirectly as a result of the said violation and any and all property used or intended to be used in any manner or part to commit and to facilitate the commission of the violation alleged in Count 1 of this indictment, including but not limited to the property described below in Part E.

C.    Upon conviction for violation of Title 21, United States Code, Section 841 and Title 18, United States Code, Section 2, as alleged in Counts 2 and 3 of this indictment, the defendants,

AL RAY SHOEMAKER, d/b/a AL'S BP, and
BRENDA MCCALL,

shall forfeit to the United States pursuant to Title 21, United States Code, Section 853, any and all property constituting or derived from any proceeds the said defendants obtained directly or indirectly as a result of the said violation and any and all property used or intended to be used in any manner or part to commit and to facilitate the commission of the violation alleged in Counts 2 through 3 of this indictment, including but not limited to the property described below in Part E.

D.    Upon conviction for violation of Title 21, United States Code, Section 841, and Title 18, United States Code, Section 2, as alleged in Count 4 of this indictment, the defendants,

AL RAY SHOEMAKER, d/b/a AL'S BP, and
MARTHA DAVIS,

shall forfeit to the United States pursuant to Title 21, United States Code, Section 853, any and all property constituting or derived from any proceeds the said defendants obtained directly or indirectly as a result of the said violation and any and all property used or intended to be used in any manner

4

or part to commit and to facilitate the commission of the violation alleged in Count 4 of this indictment, including but not limited to the property described below in Part E.

E.    Upon conviction for violation of Title 21, United States Code, Section 841, and Title 18, United States Code, Section 2, as alleged in Count 5 of this indictment, the defendants,

AL RAY SHOEMAKER, d/b/a AL'S BP, and
KELLY LNU,

shall forfeit to the United States pursuant to Title 21, United States Code, Section 853, any and all property constituting or derived from any proceeds the said defendant obtained directly or indirectly as a result of the said violation and any and all property used or intended to be used in any manner or part to commit and to facilitate the commission of the violation alleged in Count 5 of this indictment, including but not limited to the property described below.

> All that lot or parcel of land, together with its buildings, appurtenances, improvements, fixtures, attachments and easements, Known as AL'S BP located on Highway 52 West Hartford, Alabama, more particularly described as:
>
> One lot of parcel of land in the Town of Hartford, Geneva County, Alabama as surveyed by Branton Land Surveyors and being more particularly described as follows: Commencing at the intersection of the west line of the SW1/4 of the SE1/4 of Section 35, T2N, R23E and the northerly R/W of Ala. Hwy. No. 52 (100' R/W); thence run N67°-55'-19"E along said R/W 394.10 feet to an existing iron pipe and the Point of Beginning; thence continue N67°-55'-19"E along said R/W 435.6 feet to a set iron pipe; thence North 215.83 feet to the SE corner of parcel one shown hereon; thence S67°-55'-19"W along the south line of said parcel one 435.6 feet; thence South 215.83 feet to the Point of Beginning.  Said land being located in the above mention forty and containing 2 acres.

F.    If any of the forfeitable property described in this forfeiture allegation, as a result of any act or omission of the defendants:

> (1)  cannot be located upon the exercise of due diligence;
>
> (2)  has been transferred or sold to, or deposited with, a third person;

5

(3) has been placed beyond the jurisdiction of the Court;

(4) has been substantially diminished in value; or,

(5) has been commingled with other property which cannot be subdivided without difficulty; the United States, pursuant to Title 21, United States Code, Section 853, intends to seek an order of this Court forfeiting any other property of said defendants up to the value of the forfeitable property, all in violation of Title 21, United States Code, Sections 841, 846, and 853 and Title 18, United States Code, Section 2.

A TRUE BILL:

_____
Foreperson

_____
LEURA GARRETT CANARY
UNITED STATES ATTORNEY

_____
TOMMIE BROWN HARDWICK
Assistant United States Attorney

_____
JOHN T. HARMON
Assistant United States Attorney

6

# ATTACHMENT B

RECEIVED IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

2005 OCT 28  P 3: 27

UNITED STATES OF AMERICA
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA.
V.

AL RAY SHOEMAKER, d/b/a
AL'S BP

)
)  CR. NO. __1:05cr00153-F__
)            [21 USC 841(f)(1);
)             18 USC 2]
)
)
)  INFORMATION

The United States Attorney charges:

## COUNT 1

Beginning on and about April 10, 2003, and continuing to on or about May 1, 2003,

in Geneva County, Alabama, within the Middle District of Alabama,

AL RAY SHOEMAKER, d/b/a
AL'S BP,

defendant herein, while aiding and abetting others known and unknown, in violation of this

subchapter, namely, Title 21, United States Code, Section 841(c)(2), did knowingly distribute a listed

chemical, to-wit: pseudoephedrine, other than in violation of a record-keeping and reporting

requirement of Section 830 of Title 21, all in violation of Title 21, United States Code, Section

841(f)(1) and Title 18, United States Code, Section 2.

### Forfeiture Allegation

A.    Count 1 of this information is hereby repeated and incorporated herein by reference.

B.    Upon conviction for violation of Title 21, United States Code, Section 841, as alleged

in Count 1 the defendant,

AL RAY SHOEMAKER, d/b/a
AL'S BP,

shall forfeit to the United States pursuant to Title 21, United States Code, Section 853, any and all

property constituting or derived from any proceeds the said defendant obtained directly or indirectly as a result of the said violation and any and all property used or intended to be used in any manner or part to commit and to facilitate the commission of the violation alleged in Count 1 of this information, including but not limited to the property described below.

> All that lot or parcel of land, together with its buildings, appurtenances, improvements, fixtures, attachments and easements, known as AL'S BP located on Highway 52 West Hartford, Alabama, more particularly described as:

> One lot of parcel of land in the Town of Hartford, Geneva County, Alabama as surveyed by Branton Land Surveyors and being more particularly described as follows: Commencing at the intersection of the west line of the SW1/4 of the SE1/4 of Section 35, T2N, R23E and the northerly R/W of Ala. Hwy. No. 52 (100' R/W); thence run N67°-55'-19"E along said R/W 394.10 feet to an existing iron pipe and the Point of Beginning; thence continue N67°-55'-19"E along said R/W 435.6 feet to a set iron pipe; thence North 215.83 feet to the SE corner of parcel one shown hereon; thence S67°-55'-19"W along the south line of said parcel one 435.6 feet; thence South 215.83 feet to the Point of Beginning. Said land being located in the above mentioned forty and containing 2 acres.

> C.     If any of the forfeitable property described in this forfeiture allegation, as a result of

any act or omission of the defendants:

> (1) cannot be located upon the exercise of due diligence;

> (2) has been transferred or sold to, or deposited with, a third person;

> (3) has been placed beyond the jurisdiction of the Court;

> (4) has been substantially diminished in value; or,

> (5) has been commingled with other property which cannot be subdivided without

difficulty; the United States, pursuant to Title 21, United States Code, Section 853, intends to seek an order of this Court forfeiting any other property of said defendants up to the value of the forfeitable property, all in violation of Title 21, United States Code, Sections 841, and 853.

LEURA GARRETT CANARY
UNITED STATES ATTORNEY

TOMMIE BROWN HARDWICK
Assistant United States Attorney

JOHN T. HARMON
Assistant United States Attorney

# ATTACHMENT  C

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CR. NO. <u>1:05cr153-F</u> |
| | ) | |
| AL RAY SHOEMAKER, d/b/a | ) | |
| AL'S BP | ) | |

## PLEA AGREEMENT

DEFENSE COUNSEL:          DAVID FRANKLIN HOLMES

ASSISTANT U.S. ATTORNEY:          TOMMIE BROWN HARDWICK

**COUNTS AND STATUTES CHARGED:**
<u>Count 1</u>       21 U.S.C. § 841(f)(1), Wrongful Distribution or Possession of listed Chemical,
                and 18 U.S.C. § 2, Aiding and Abetting

**COUNTS PLEADING PURSUANT TO PLEA AGREEMENT:**
<u>Count 1</u>       21 U.S.C. § 841(f)(1), Wrongful Distribution or Possession of listed Chemical,
                and 18 U.S.C. § 2, Aiding and Abetting

**PENALTIES BY COUNT - MAXIMUM PENALTY:**
<u>Count 1</u>
NMT  $250,000 Fine, or;
NMT  5 Years;
NMT  3Y Sup Rel;
$100  Assessment Fee;
VWPA

**ELEMENTS OF THE OFFENSE:**
<u>Count 1</u>       <u>21 U.S.C. § 841(f)(1), Wrongful Distribution or Possession of listed Chemical, and</u>
                <u>18 U.S.C. § 2, Aiding and Abetting</u>

First:          While aiding and abetting another person, the defendant distributed a listed chemical
                in violation of 21 U.S.. § 841;

Second:          That the defendant did so knowingly.
                \*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Tommie Brown Hardwick, Assistant United States Attorney, and David Franklin Holmes,

attorney for the defendant, pursuant to the provisions of Rule 11(c)(1)(C), *Federal Rules of Criminal*

*Procedure*, as Amended, have, with the authorization of the undersigned , heretofore entered into

discussions with a view toward reaching a pretrial conclusion of the charges pending in the

Information herein and a Plea Agreement has been reached by said parties in the following respects:

## GOVERNMENT'S PROVISIONS

1. Upon entering a plea of guilty by the defendant to the offenses charged in Count 1 of the

Information, the attorney for the Government will do the following:

a. The government agrees to dismiss the Indictment pending in this case;

b. The government agrees that the defendant will be sentenced to not less than 3 years

and not more than 5 years after the United States Sentencing Guidelines ("guidelines") have been

calculated by the United States Probation Officer and approved by the Court.

c. The Government agrees that should the defendant provide substantial assistance

to the government and law enforcement, the government will file a motion for downward departure

under the provisions of U.S.S.G. 5K1.1 and Rule 35, Federal Rules of Criminal Procedure, based

upon the defendant's substantial assistance to the United States in other cases, and for providing

source information in the instant cases. The defendant understands that the downward departure

motion(s) will not reduce his sentence below 3 years as agreed upon in this plea agreement.

d. The government agrees that the defendant should receive a two level reduction for

acceptance of responsibility under U.S.S.G. § 3E1.1(a). In addition, the government will file a

motion for a one level reduction under U.S.S.G. § 3E1.1(b). However, the defendant will not receive

any acceptance of responsibility if the defendant commits another federal, state or local offense after

the dates of the present offense; violates any of the conditions outlined in the Commentary to §3E1.1,

or in any way violates his term of release or supervision if applicable.

e. The government agrees that there are no other motions for downward departure

applicable in this case. If the defendant files a motion for downward departure, or should the Court

2

in its discretion using the United States Sentencing Guidelines as advisory, sentence the defendant

below 3 years, this plea agreement will become void.

2. The United States reserves the right to inform the Court and the Probation Department

of all facts pertinent to the sentencing process, including all relevant conduct concerning the offense

and the defendant's background.

### DEFENDANT'S PROVISIONS

3.      The defendant agrees to the following:

a. To plead guilty to Count 1 of the Information.

b. The defendant agrees that there are no other motions for downward departure

applicable in this case except as specified above in paragraph 1.c., under Government Provisions.

If the defendant files a motion for downward departure, or should the Court in its discretion using

the United States Sentencing Guidelines as advisory, sentence the defendant below 3 years, this plea

agreement will become void. However, the defendant may withdraw the plea if the court rejects the

terms of the plea agreement pursuant to Rule 11(c)(1)(C).

c. It is understood that by signing this agreement, you agree to provide substantial

assistance to law enforcement agents. "Substantial assistance" with law enforcement agents under

this agreement is understood to include, but is not limited to, the following:

(1)     Debriefing by the Federal and State Law Enforcement officers.

(2)     Making consensually monitored telephone calls to, or otherwise contacting,
        persons known to be involved in violations of the law.

(3)     Introducing undercover law enforcement officers to persons you know to be
        involved in illegal activity.

(4)     Maintaining contact with the law enforcement agents with whom you are
        working. You shall work under the direct supervision of law enforcement
        agents. At no time are you authorized to take any actions without first
        obtaining the direct authorization of such agents. Any independent and

3

unauthorized actions will be deemed a violation of this agreement.

(5)    Testifying truthfully against any such persons before any and all grand juries and at any and all hearings and trials.

(6)    You agree to make a good faith effort to assist law enforcement agencies in arranging and making undercover contacts with other persons you know to be involved in illegal activity.

(7)    You will cooperate fully and truthfully with the government in this investigation and in any other federal criminal investigation. You will respond, completely, fully and truthfully to all inquiries addressed to you by representatives of the government, and you will testify fully and truthfully at any and all reasonable times and places before grand juries and against any and all defendants at the trial of any and all cases arising from this investigation or any other such investigation.

### d. **DEFENDANT WAIVES APPEAL AND COLLATERAL ATTACK**

Understanding that 18 U.S.C. § 3742 provides for appeal by a defendant of the sentence under certain circumstances, defendant expressly waives any and all rights conferred by 18 U.S.C. § 3742 to appeal the sentence on any other ground and waives the right to attack the sentence in any post-conviction proceeding. Except, the defendant does not waive the right to appeal or post-conviction relief with respect to ineffective assistance of counsel and prosecutorial misconduct.

Further, the parties agree that nothing in this agreement shall affect the United States' right and/or duty to appeal as set forth in 18 U.S.C. § 3742(b). However, if the United States appeals on any basis defendant's sentence pursuant to 18 U.S.C. § 3742(b), defendant is released from this waiver.

### **FACTUAL BASIS**

4. The defendant understands the nature of the charge to which the plea is offered involves proof as to the following: With respect to Count 1: Between April 10, 2003 and May 1, 2003, the defendant, while aiding and abetting persons known and unknown sold 111 bottles of pseudoephedrine to a cooperating individual in Geneva County, Alabama. Each bottle contained 36

4

tablets, and each tablet contained 60 milligrams of pseudoephedrine. The defendant knew or had reason to believe that the pseudoephedrine tablets were listed chemicals that would be used to manufacture methamphetamine.

### DEFENDANT'S UNDERSTANDING AND ACKNOWLEDGMENT

5. The defendant agrees to enter a guilty plea to Count 1 of the Information.

6. The defendant, before entering a plea of guilty to Count 1 of the Information, as provided for herein by said Plea Agreement, advises the Court that:

a. The discussions between the attorney for the Government and the attorney for the defendant toward reaching an agreed plea in this case have taken place with the defendant's authorization and consent.

b. The defendant further understands that pursuant to Title 18, United States Code, Section 3013, said $100 assessment is to be paid by the defendant on the date of sentencing and that if a fine is imposed by the Court at sentencing, the defendant shall meet with a member of the Financial Litigation Section of the United States Attorney's Office on the day of sentencing and complete a written personal financial statement setting forth the defendant's assets and liabilities as of the date of the offense. The defendant will make an honest, good faith effort to pay the said fine as directed by the Financial Litigation Section of the United States Attorney's Office. The defendant further understands that by completing the financial statement, the defendant is representing that it is true and accurate to the best of the defendant's ability, knowledge, and belief.

c. The defendant understands that the defendant has a right to be represented by an attorney at every stage of the proceedings against the defendant herein and is represented by the defendant's undersigned attorney.

d. The defendant understands that the defendant has the right to plead not guilty and has the right to be tried by a jury and, at a trial thereof, has the right to the assistance of counsel, the right to confront and cross-examine witnesses against the defendant, the right to call witnesses in the defendant's own behalf, and the right not to be compelled to incriminate the defendant, and that if the defendant enters a plea of guilty herein, there will not be a further trial of any kind and that by the entry of such a plea, the defendant waives the right to a trial by jury or to a trial before the Court.

e. The defendant further understands that in entering a plea of guilty herein, the Court may ask questions about the offense to which the plea is entered and further understands that if the defendant answers these questions under oath, on the record, and in the presence of counsel, which questions and answers would be recorded, that the answers may later be used against the defendant in a prosecution for perjury or false statement if the answers are not truthful.

f. The defendant further understands and advises the Court that the plea agreement as set forth herein and the plea to be entered by the defendant as a result thereof is voluntary on the defendant's part and is not the result of any force or threats or of any promises apart from the aforesaid Plea Agreement. The defendant further advises the Court that the Plea Agreement set forth herein is the result of prior discussions between the attorney for the Government and the attorney for the defendant, all conducted with the defendant's authorization, knowledge and consent.

g. The defendant further advises the Court that the defendant's understanding of this Plea Agreement is as set forth in this document.

h. The defendant further advises the Court that the defendant understands that after the entry of the guilty plea, the defendant may withdraw the plea if the Court rejects the plea agreement, pursuant to Rule 11(c)(1)(C). However, if the defendant withdraws the guilty plea, the government will prosecute the defendant on all charges alleged in the Information.

i. The defendant further advises the Court that the defendant understands and has been advised that evidence of a plea of guilty, later withdrawn or an offer to plead guilty to the crime charged in the Information herein, or of statements made in connection with and relevant to said plea or offer to plead, shall not be admissible in any civil or criminal proceedings against the defendant. However, the defendant does understand that evidence of a statement made in connection with and relevant to a plea of guilty, later withdrawn, or an offer to plead guilty to the crimes charged in the Information herein, is admissible in a criminal proceeding for perjury or false statement when the statement was made by the defendant under oath, on the court record, and in the presence of counsel.

j. The Defendant is satisfied that defense counsel has been competent and effective in representing the defendant.

7. The undersigned attorneys for the Government and for the defendant represent to the Court that the foregoing Plea Agreement is the agreement of the parties that has been reached pursuant to the Plea Agreement procedure provided for in Rule 11(c)(1)(C), *Federal Rules of Criminal Procedure*, as amended. The attorney for the defendant further advises the Court that the defendant has been advised of the nature of the charge to which the foregoing described plea is to be offered, and that the defendant has been advised of the defendant's right to plead not guilty and to be tried by a jury on all issues herein; of the maximum possible penalty provided by law; that by the entering of a plea of guilty as aforesaid, the defendant waives the right to be tried by a jury or by the Court, waives the right to confront and cross-examine witnesses against the defendant and the right not to be compelled to incriminate the defendant; and that if the defendant pleads guilty, there will not be a further trial of any kind. Further, the defendant has been advised that if the defendant pleads guilty, the Court may ask questions about the offense to which the defendant has pleaded and that if the plea is rejected or later withdrawn, that the answers to such questions may not be used

against the defendant in a civil or criminal proceeding, but that the defendant's answers may later be used against the defendant in a prosecution for perjury or false statement if the answers are not truthful.

8. The defendant understands that the U.S. Probation Office will prepare a presentence investigation report for the Court. Although the Court must consider the Guidelines as contained in the presentence report, the Guidelines are no longer mandatory and binding on the sentencing court but are now advisory. Notwithstanding, the Probation Officer will consider defendant's conduct related to the offense to which the plea is offered, as well as the defendant's criminal history. Considering the advisory nature of the Guidelines, the offense level or criminal history category, as calculated by the Probation Officer, may differ from that projected by defendant's counsel or the U.S. Attorney. In the event that the Court, relying on the Guidelines as advisory, decides to sentence the defendant within the statutory minimum and maximum, after considering 18 U.S.C. § 3553(a) and the Guidelines, and higher than the defendant anticipated, the defendant will have the right to withdraw the plea.

This _1st_ day of November, 2005.

Respectfully submitted,

LEURA GARRETT CANARY
UNITED STATES ATTORNEY


Andrew O. Schiff
Deputy Chief, Criminal Section
Post Office Box 197
Montgomery, Alabama 36101
(334)223-7280


Tommie Brown Hardwick, ASB4152 W86T
Assistant United States Attorney

I HAVE READ THE FOREGOING PLEA AGREEMENT, UNDERSTAND THE SAME, AND THE MATTER AND FACTS SET FORTH THEREIN ACCURATELY AND CORRECTLY STATE THE REPRESENTATIONS THAT HAVE BEEN MADE TO ME AND ACCURATELY SET FORTH THE CONDITIONS OF THE PLEA AGREEMENT THAT HAS BEEN REACHED.

IN ADDITION TO THE FOREGOING PROVISIONS TO WHICH I AGREE, I SWEAR UNDER PENALTY OF PERJURY THAT THE FACTS IN THE "FACTUAL BASIS" PARAGRAPH ABOVE ARE TRUE AND CORRECT AND THAT I AM SATISFIED THAT I HAVE RECEIVED COMPETENT ADVICE AND REPRESENTATION FROM MY DEFENSE COUNSEL, DAVID FRANKLIN HOLMES

AL RAY SHOEMAKER
Defendant

11-2-05
Date

DAVID FRANKLIN HOLMES
Attorney for the Defendant

11-2-05
Date

9

# ATTACHMENT   D

# United States District Court

<u>**MIDDLE**</u> DISTRICT OF <u>**ALABAMA**</u>

UNITED STATES OF AMERICA

v.

**WAIVER OF INDICTMENT**

**AL RAY SHOEMAKER**

CASE NUMBER: 1:05cr153-F

I, <u>AL RAY SHOEMAKER</u>, the above named defendant, who is accused of

VIOLATIONS OF TITLE ~~18~~ 21 USC § 841(f)(1),

being advised of the nature of the charge(s), the proposed information, and of my rights, hereby

waive in open court on <u>11-2-05</u> prosecution by indictment and consent that the
      *Date*

proceeding may be by information rather than by indictment.

_____
*Defendant*

_____
*Counsel for Defendant*

Before _____
    *Judicial Officer*

# ATTACHMENT  E

IN THE UNITED STATES DISTRICT COURT

FOR

THE MIDDLE DISTRICT OF ALABAMA

THE UNITED STATES
OF AMERICA

vs.                                      CRIMINAL ACTION NO.
1:05-CR-153

AL RAY SHOEMAKER

CHANGE OF PLEA

\* \* \* \* \* \* \* \* \* \*

BEFORE:       The Hon. Charles S. Coody

HEARD AT:     Montgomery, Alabama

HEARD ON:     November 2, 2005

APPEARANCES:  Tommie Brown-Hardwick, Esq.
              David F. Holmes, Esq.

Page 2

```
 1   WHEREUPON, THE FOLLOWING PROCEEDINGS WERE HEARD BEFORE
     THE HON. CHARLES S. COODY ON NOVEMBER 2, 2005 AT THE
 2   UNITED STATES COURTHOUSE IN MONTGOMERY, ALABAMA:

 3

 4          THE COURT:  Good afternoon.

 5          We are here for a change of plea in United

 6   States vs. Shoemaker, zero five one fifty-three.

 7          Mr. Shoemaker, if you will please stand and

 8   raise your right hand.  For the purposes of this

 9   proceeding you must be sworn.

10          (Whereupon, the defendant was duly sworn by

11   the courtroom deputy clerk.)

12          THE COURT:  What is your full name?

13   A   Al Ray Shoemaker.

14   Q   And how old are you?

15   A   I'm sixty-two -- sixty-three years old.

16          THE COURT:  All right.  And how far have you

17   gone in school?

18   A   Twelve years.  And after high school I went for --

19   I went to vocational school for five years.

20          THE COURT:  Have you recently been treated for

21   any mental illness or addiction to narcotic drugs of any

22   kind?

23   A   Mental illness or addiction to narcotic -- no, sir,

24   I have not.  I have my hearing aids in, but --

25          THE COURT:  I'll try to speak a little louder
```

Page 3

```
 1   for you, Mr. Shoemaker.
 2          Are you currently under the influence of any
 3   drugs, medicine, pills or alcoholic beverage?
 4   A   Absolutely not.
 5          THE COURT:  All right.  Mr. Shoemaker, you
 6   have the right to have these proceedings conducted and
 7   your guilt adjudicated by the next higher ranking judge
 8   who is a district judge.  However, you may consent to my
 9   handling these proceedings and adjudicating your guilt.
10   Have you and Mr. Holmes talked about that?
11   A   Yes, sir, we have.
12          THE COURT:  And do you wish me to handle these
13   proceedings.
14   A   I do.
15          THE COURT:  For that purpose, then, I need you
16   to indicate your consent by signing this form which my
17   deputy is handing Mr. Holmes.
18          (Whereupon, both the defendant and his counsel
19   executed said document.)
20          THE COURT:  Mr. Shoemaker, let me remind you
21   that you are under oath, and should you answer falsely
22   any of the questions put to you during this proceeding,
23   those answers later can be used against you in a
24   prosecution for perjury or for making a false statement.
25   Do you understand that?
```

Page 4

```
 1   A   Yes, sir.
 2          THE COURT:  All right.  Now you are entering a
 3   guilty plea to a felony information.
 4          Is that correct, Mr. Holmes?
 5          MS. HOLMES:  That's correct, Your Honor.
 6          THE COURT:  Mr. Shoemaker, you need to
 7   understand that you have the right to have any criminal
 8   charges you brought and considered by a grand
 9   jury.  A grand jury is composed of a group of people at
10   least sixteen and not more than twenty-three, twelve of
11   whom must agree that there is probable cause to believe
12   that you have committed the crime.  Do you understand a
13   grand jury?
14   A   Yes, sir.
15          THE COURT:  You have the right to have any
16   criminal charges against you brought and considered by a
17   grand jury.  However, you may give up your right to a
18   grand jury and agree the criminal charges may be brought
19   against you by a felony information.  Is that what you
20   wish to do in this case?
21   A   That's correct.
22          THE COURT:  And before making that decision,
23   did you discuss this matter with Mr. Holmes, your
24   lawyer?
25   A   I did.
```

Page 5

```
 1          THE COURT:  All right.  To indicate that you
 2   are giving up your right to a grand jury considering an
 3   indictment against you, I need you to sign a waiver form
 4   indicating that you have had your rights explained to
 5   you and that you were giving up your right to have a
 6   grand jury consider the charges.
 7          (Whereupon, the defendant executed said
 8   document.)
 9          THE COURT:  Mr. Shoemaker, have you received a
10   copy of the information filed against you in this case?
11   A   Yes, sir, I have.
12          THE COURT:  And have you read that information
13   and discussed the charges with Mr. Holmes, your lawyer?
14   A   Yes, I have.
15          THE COURT:  And do you understand those
16   charges?
17   A   Yes, sir, I do.
18          THE COURT:  Are you fully satisfied with Mr.
19   Holmes' representation of you in this case?
20   A   Absolutely.
21          THE COURT:  All right.  Now I have before me a
22   plea agreement.  I am turning to page nine of that plea
23   agreement.  Is that your signature on page nine,
24   Mr. Shoemaker?
25   A   That's it, yes, sir.
```

Page 6

1      THE COURT: All right. Before signing this
2  plea agreement did you have an opportunity to read it
3  and to discuss the terms of it with Mr. Holmes?
4  A  I did.
5      THE COURT: And do you understand the terms of
6  the plea agreement?
7  A  Yes, sir, I do.
8      THE COURT: Is this plea agreement the only
9  agreement which you have with the United States?
10  A  Yes, sir.
11      THE COURT: All right. Other than this plea
12  agreement, has anyone made any promise to you to get you
13  to plead guilty?
14  A  No, sir.
15      THE COURT: All right. Mr. Shoemaker, the
16  sentencing recommendation in the plea agreement is not
17  binding on the Court. The sentencing judge will review
18  the plea agreement and at a later time make a decision
19  whether to sentence you in accordance with the plea
20  agreement. If the sentencing judge decides that the
21  sentence -- that he will not follow the recommendation,
22  you will be notified of that and at that time you will
23  have the right to withdraw your guilty plea. Do you
24  understand that?
25  A  Yes, sir.

Page 7

1      THE COURT: Mr. Shoemaker, at that time if you
2  decide to not withdraw your guilty plea, the Court may
3  then impose on you any lawful sentence, even if it is
4  more severe than the sentence you expect. Do you
5  understand that?
6  A  I do.
7      THE COURT: All right. Has anyone attempted
8  in any way to force you to plead guilty in this case?
9  A  No, sir.
10      THE COURT: Mr. Shoemaker, I want to make
11  certain that you understand the consequences of your
12  guilty plea. First, this is a felony offense, and upon
13  conviction of this offense you may be deprived of
14  valuable civil rights, such as the right to vote, the
15  right to hold public office, the right to serve on a
16  jury and the right to possess any kind of firearm. Do
17  you understand that?
18  A  I do.
19      THE COURT: The offense to which you are
20  entering a guilty plea is wrongful distribution of, or
21  possession of, a listed chemical and aiding and
22  abetting. The maximum punishment for that offense is a
23  term of imprisonment of not more than five years, a fine
24  of not more than two hundred fifty thousand dollars or
25  both the fine and the imprisonment. Upon release from

Page 8

1  any imprisonment you would be subject to a period of
2  supervised release of not more than three years. You
3  would be required to pay a one hundred dollar assessment
4  fee to the Court. Do you understand that?
5  A  Yes, sir.
6      THE COURT: Once placed on supervised release,
7  should you violate the conditions of supervised release
8  you can be given additional time in prison. Do you
9  understand that?
10  A  Yes, sir.
11      THE COURT: Now have you and Mr. Holmes talked
12  about the sentencing guidelines and how they may apply
13  in your case?
14  A  We have.
15      THE COURT: Mr. Shoemaker, the guidelines are
16  no longer mandatory; however, they remain an important
17  factor which the Court must consider in imposing a
18  sentence on you. Do you understand that?
19  A  Yes, sir.
20      THE COURT: If sentenced to a term of
21  imprisonment you will not be released on parole because
22  parole has been abolished. Do you understand that?
23  A  Yes, sir.
24      THE COURT: All right. Under the terms of
25  this plea agreement, Mr. Shoemaker, you are giving up

Page 9

1  your right to appeal any sentence which is imposed on
2  you or otherwise attack any sentence with the exception
3  of prosecutorial misconduct or ineffective assistance of
4  counsel. Do you understand that with those two
5  exceptions, you cannot appeal or otherwise attack a
6  sentence imposed on you?
7  A  Yes, sir.
8      THE COURT: The Government is not, however,
9  giving up any right that it may have to appeal the
10  sentence. Do you understand that?
11  A  Yes, sir.
12      THE COURT: Mr. Shoemaker, you have the right
13  to plead not guilty to the charge against you and to
14  persist in that plea. You would then have the right to
15  the assistance of counsel for your defense, the right to
16  see and hear all witnesses and have them cross examined
17  in your defense. You would have the right on your own
18  part to decline to testify unless you voluntarily
19  elected to do so in your defense, and you would have the
20  right to issue subpoenas to compel witnesses to come to
21  court to testify in your defense. Do you understand
22  your right to a trial and the other rights I've
23  mentioned to you?
24  A  Yes, sir, I do.
25      THE COURT: At a trial on these charges, if

Page 10

1  you decided to not put on any evidence or to not
2  testify, those facts could not be held against you.  Do
3  you understand that?
4  A  Yes, sir.
5        THE COURT:  Mr. Shoemaker, by entering a plea
6  of guilty you are giving up your right to a trial and
7  the other rights I've mentioned to you.  There will be
8  no trial of any kind, and based solely on your plea of
9  guilty the Court will find you guilty and later impose
10 sentence on you.  Do you understand that?
11 A  Yes, sir, I do.
12       THE COURT:  At a trial on this charge, Mr.
13 Shoemaker, the Government would be required to prove
14 beyond a reasonable doubt that while aiding and abetting
15 another person you distributed a listed chemical, that
16 is a chemical listed in eighteen United States Code,
17 Section eight forty-one, and that you did so knowingly.
18 Do you understand what the Government would be required
19 to prove at a trial in this case?
20 A  Yes, sir.
21       THE COURT:  You looked hesitant.
22 A  Because I didn't understand one word until I
23 actually understood it, and that's the reason I was
24 hesitant.
25       THE COURT:  All right.  Before I can accept

Page 11

1  your guilty plea -- and if you don't understand
2  something, you stop me because I know you're having a
3  little trouble hearing, all right?
4  A  Yes, sir.
5        THE COURT:  Before I can accept your guilty
6  plea I must be satisfied there is a factual basis for
7  it.
8        Who wishes to assist the Court with that
9  matter?
10       MS. HARDWICK:  Your Honor, the Government will
11 pose the questions.
12       THE COURT:  All right.  Please answer Ms.
13 Hardwick's questions, Mr. Shoemaker.
14       MS. HARDWICK:  Good afternoon, Mr. Shoemaker.
15 A  Good afternoon.  And who are you?
16       MS. HARDWICK:  Tommy Hardwick with the United
17 States' Attorney's Office.
18       Mr. Shoemaker, between April the tenth two
19 thousand and three, and May first, two thousand and
20 three, did you own and operate Al's B. P. in Geneva
21 County?
22 A  Yes, ma'am.
23       MS. HARDWICK:  At Al's B. P. did you have
24 employees who worked with and for you?
25 A  Yes, ma'am.

Page 12

1        MS. HARDWICK:  During those dates, did you
2  sell a hundred and eleven bottles between you and your
3  employees of pseudo ephedrine referred to as pseudo
4  sixties?
5  A  Yes, ma'am.
6        MS. HARDWICK:  I'll rephrase the question to
7  clarify further.  The employees who worked there, you
8  stocked this ephedrine in the store and ordered it,
9  correct?
10 A  I didn't order it.
11       MS. HARDWICK:  But you knew that it was there?
12 A  Oh, yes, ma'am.
13       MS. HARDWICK:  And you owned Al's B. P. where
14 it was being sold?
15 A  That's correct.
16       MS. HARDWICK:  And with your knowledge these
17 employees sold the merchandise that was there which
18 included pseudo ephedrine.
19 A  That's correct.
20       MS. HARDWICK:  Did each bottle of pseudo
21 ephedrine contain thirty-six tablets, the pseudo sixties
22 they're referred to?
23 A  Yes, ma'am.  And some of them thirty milligrams.
24       MS. HARDWICK:  Your Honor, we believe that
25 with the stipulation that Geneva County is within the

Page 13

1  Middle District of Alabama, that those statements from
2  Mr. Shoemaker are sufficient to satisfy the elements.
3        MS. HOLMES:  We would so stipulate.
4        THE COURT:  There is a sentence in the plea
5  agreement that says that Mr. Shoemaker had reason to
6  believe that the tablets would be used to manufacture
7  methamphetamine.  I don't think you asked him that.
8        MS. HARDWICK:  Your Honor, I will clarify
9  that.
10       Mr. Shoemaker, did you know or have reason to
11 believe that pseudo ephedrine tablets or pseudo sixties
12 were used to manufacture methamphetamine?
13 A  At the present time, no, ma'am, I did not.  Because
14 the law was unclear.  I did not know the law.
15       MS. HOLMES:  The question was, did you have
16 reason to know, based on your conversation with the tape
17 recorder.
18       THE COURT:  Well, let's back up.  You had a
19 conversation with an undercover officer, is that
20 correct?
21 A  That's correct, yes, sir.
22       THE COURT:  And during that conversation you
23 told him what did you think about why those tablets were
24 being sold?  Why they were being bought?
25       MS. HOLMES:  Your Honor, might I assist the

Page 14

1  Court?
2      THE COURT:  You may.
3      MS. HOLMES:  Mr. Shoemaker, during the course
4  of my representation of you and the charges in this
5  case, did I play for you certain tape recordings and
6  show you certain transcripts?
7  A  Yes, sir.
8      MS. HOLMES:  During those transcripts was
9  there conversations with you by other people by which
10  they indicated that they were going to have to, quote,
11  cook up some to come up with a thousand dollars to pay
12  for a hundred bottles?  Do you recall that?
13  A  I recall the conversation.
14      MS. HOLMES:  Okay.  And was there conversation
15  by which you entered into discussions that some people
16  had just recently been arrested?
17  A  That's correct.
18      MS. HOLMES:  If that's of more assistance to
19  the Court?
20      MS. HARDWICK:  Your Honor, if I could further
21  ask.
22      Based on the information, knowing that people
23  had been arrested for buying the pseudo ephedrine and
24  cooking up, did that give you reason to believe that
25  they were cooking methamphetamine?

Page 15

1  A  As far as being wrong in this thing, I am wrong.
2  But as far as hearing the word "cook," I never ever
3  heard the word "cook".
4      MS. HARDWICK:  Did you know that they were
5  manufacturing methamphetamine with it?
6  A  I did not know that for an absolute fact.
7      MS. HARDWICK:  Did you have reason to believe
8  it?
9  A  After the fact, yes, ma'am.
10      THE COURT:  Why did you think they were buying
11  the pseudo ephedrine?
12  A  One girl stopped me at the post office one time and
13  asked me if I had pseudos, and I told her that, "Yes,
14  ma'am, we do."  And she asked me as she wanted ten
15  bottles, and I guess there is ten bottles down there, I
16  don't know if there is or not.  I asked her, "What're
17  you gonna do with them?  And she told me that she's
18  going to take them to the flea market and sell them.
19  But I'm not trying to get out of any guilt here.  I'm
20  only trying to tell the truth.
21      MS. HOLMES:  May I further inquire, Your
22  Honor?
23      THE COURT:  You may.
24      MS. HOLMES:  Mr. Shoemaker, did it later
25  during the course of this, prior to your arrest, become

Page 16

1  apparent to you that people were using these for the
2  manufacture of methamphetamine?
3  A  I did.
4      MS. HARDWICK:  Your Honor, if I could have one
5  moment to confer with counsel?
6      (Whereupon, Ms. Hardwick conferred with Mr.
7  Holmes off the record.)
8      MS. HOLMES:  Mr. Shoemaker, do you recall me
9  going over some transcripts with you?
10  A  Yes, sir.
11      MS. HOLMES:  And you indicated that you
12  couldn't keep them in stock, and that you had to find
13  another supplier, that they just busted two.  Do you
14  remember that tape?  In fact, we played it coming back
15  from Montgomery?
16  A  Yes, sir.
17      MS. HOLMES:  Okay.  And that particular
18  conversation took place on April of 2003 which is within
19  the time period of this information, is that right?
20  A  Yes, sir.
21      MS. HARDWICK:  Your Honor, the Government's
22  proof would be that he knew or had reason to believe
23  that they were manufacturing methamphetamine.  And I
24  believe based on his knowledge that people were being
25  busted with the pills that he was selling in large

Page 17

1  quantities, that the Government would be able to present
2  sufficient evidence that he had at least reason to
3  believe that they were manufacturing methamphetamine.
4      MS. HOLMES:  And, Your Honor, so that I don't
5  mislead the Court or mislead my client, I think if I --
6  I agree with the Government, that he had reason to
7  believe and that's the purpose for entering into this
8  plea.  And Mr. Shoemaker agrees with that.
9      As far as knowing that people were busted for
10  buying his pseudo ephedrine, there is nothing in the
11  discovery that I received to indicate that.  He should
12  have believed, based on the quantities that he was
13  selling, that they were being used for something other
14  than an antihistamine, and that they were being used in
15  the manufacture of methamphetamine based on the fact of
16  conversations that were produced from discovery.  And
17  there is no question about that.
18      THE COURT:  The statute says, "Whoever
19  knowingly distributes a listed chemical," he's being
20  charged under 841(f)(1), "Whoever knowingly distributes
21  a listed chemical in violation of this subchapter,"
22  doesn't the statute require a knowing?
23      MS. HARDWICK:  It requires -- subchapter C two
24  is the subchapter that is also contained in there.  And
25  subchapter eight forty-one C two says that any person

Page 18

1  who normally or intentionally possesses or distributes a
2  listed chemical knowing or having reasonable cause to
3  believe that the listed chemical would be used to
4  manufacture a controlled substance.
5      THE COURT: The factual development of whether
6  he had reasonable cause to believe is not clear to me.
7  Both of you are familiar with the transcripts, the Court
8  is not. There needs to be a more full factual
9  development of what he knew.
10      Miss Hardwick, Mr. Holmes, either one of you
11  may ask him the questions. In other words, I need to
12  know what he knew at the time the sales were made.
13      MS. HOLMES: Mr. Shoemaker, once again I'd
14  like to direct your attention to the tape recording that
15  we reviewed and the transcript we reviewed pertaining to
16  a conversation you had on April 17th with a person
17  that's come to be identified to you as Brenda Barnett, I
18  believe is her name. Do you recall that?
19  A  I do.
20      MS. HOLMES: Do you recall that you had a
21  conversation with her on that day in which she had
22  requested the opportunity to purchase a hundred bottles
23  of pseudo sixties from you?
24  A  That's correct.
25      MS. HOLMES: Do you recall advising her that

Page 19

1  she could only get a hundred bottles now because of a
2  fluke in the manner in which you had a discovery?
3  A  That's correct.
4      MS. HOLMES: And did you tell her, or did she
5  tell you, or do you recall reading in the transcript in
6  which she advised you that she would have to cook up the
7  money in order to have the money to pay for that?
8  A  The transcript says that.
9      MS. HOLMES: And you heard the tape as well,
10  did you not?
11  A  Yes, sir.
12      MS. HOLMES: Okay.
13  A  I did, and I told you that I never did heard the
14  word "cook". But anyway, it's neither here nor there.
15  The hundred bottles was offered, and --
16      MS. HOLMES: Technically it is here nor there,
17  Mr. Shoemaker, but let me try to clarify. During that
18  course of that conversation, did you then advise her
19  that she could come back and whatever you had you would
20  sell her?
21  A  I did.
22      MS. HOLMES: And you agreed to do that?
23  A  I did.
24      MS. HOLMES: Your Honor, if I might further
25  just make a statement to the Court? Particularly under

Page 20

1  the statute, the offense actually that is charged is not
2  necessarily knowing that they were going to be
3  manufactured into methamphetamine, but knowingly sold a
4  scheduled chemical. With regard to the particular
5  chemicals, there is additional statutory regulatory law
6  that proscribes the sale of more than nine grams, which
7  figures out to be possibly more than three bottles but
8  less than four in any given transaction.
9      I'm certainly not trying to argue the
10  Government's case for them; at the same time I would
11  submit that the knowingly or should have known issue is
12  that he was selling a controlled or scheduled substance,
13  not necessarily that it was going to be manufactured for
14  the use of methamphetamine.
15      If the Government disagrees, I'll stand
16  corrected. That was the way I read the law when I was
17  reading it.
18      MS. HARDWICK: Your Honor, it charges him with
19  wrongful distribution or possession of a listed
20  chemical. And it states in the information that he did
21  so, that he distributed the listed chemical pseudo
22  ephedrine knowing that it was used to manufacture or had
23  reason to believe that it be used. The Government would
24  like to present to the Court a proffer. The
25  Government's evidence would prove, based on a transcript

Page 21

1  and a tape that was submitted to the Defense in
2  discovery --
3      THE COURT: Well what the Government can prove
4  at trial and what Mr. Shoemaker agrees may be entirely
5  two different things. He has refused to acknowledge
6  that he heard the word "cook". Now arguably I suppose
7  anyone who sells that much pseudo ephedrine must know
8  it's not being sold because somebody has a cold or an
9  allergy. But that's neither here nor there. I've not
10  heard anything to indicate that Mr. Shoemaker agrees to
11  the facts which establish the crime.
12      The fact that there's a regulatory problem
13  with what he did is quite beside the point, because the
14  statute makes reference to itself. It says "in
15  violation of this chapter," not in violation of some
16  regulation.
17      MS. HARDWICK: And, Your Honor, I agree with
18  the Court. I cannot dispute that the Court has not
19  heard that from Mr. Shoemaker. And Mr. Shoemaker is
20  standing here today saying he did not, know nor did he
21  have a reason to believe, that they were manufacturing
22  methamphetamine. I understand the Court's position.
23      MS. HOLMES: Judge, I can further inquire, but
24  I don't know what more I can get --
25      THE COURT: Well I'm not here to bargain with

Page 22

1 Mr. Shoemaker. The Court simply finds that there is not
2 a sufficient factual basis to support a guilty plea
3 because I did not find that the facts support each
4 essential element of the offense. As a consequence, I
5 cannot accept his guilty plea.
6      MS. HOLMES: May I have a couple of moments
7 with Mr. Shoemaker?
8      THE COURT: You may.
9      Let's do this: Let me proceed to the next
10 matter because I have one other change of plea and then
11 I'll inquire as to the status.
12      MS. HOLMES: Thank you, Judge.
13      (Whereupon, a recess was taken.)
14      THE COURT: We will now proceed with the
15 matter of United States vs. Shoemaker, two thousand five
16 one fifty-three.
17      MS. HOLMES: Your Honor, might I continue
18 inquiring?
19      THE COURT: Yes, Mr. Holmes, you may.
20      MS. HOLMES: Mr. Shoemaker, do you recall --
21 referring you back to April seventeenth, two thousand
22 three once again, do you recall a conversation with this
23 person who has been identified to you as Brenda Barnett
24 about the manner that you came to be in possession of
25 the quantity of pseudo sixties at that time?

Page 23

1 A  I do.
2      MS. HOLMES: And do you recall telling her
3 that you had to actually find another buyer -- I mean
4 another seller of the substance, that your current
5 seller didn't know that you had?
6 A  That's correct.
7      MS. HOLMES: And do you recall there being
8 discussions about people being arrested with regard to
9 controlled substances as part of this conversation?
10 A  I do.
11      MS. HOLMES: Do you agree, and is it your
12 position, that you should have known that these items
13 were being purchased for the use of the creation of
14 methamphetamine?
15 A  I should have known.
16      MS. HOLMES: And you chose to ignore the
17 potential facts that were before you?
18 A  That's correct.
19      THE COURT: Is the Government satisfied?
20      MS. HARDWICK: Yes, Your Honor.
21      THE COURT: All right. Mr. Shoemaker, I have
22 told you the rights that you have and the rights which
23 you give up by pleading guilty to the charges against
24 you. Do you still desire to enter a guilty plea to the
25 information?

Page 24

1 A  Yes, sir.
2      THE COURT: Mr. Shoemaker, let me remind you
3 that as part of that felony information, you will
4 forfeit to the United States the property known as I
5 believe it's Al's B. P.?
6      MS. HOLMES: Your Honor, we've reached an
7 agreement with the Government. I thought Mr. Harmon was
8 going to be here today. That we're going to continue
9 the issue with regard to that count pending sentencing
10 and he was going to request that that be set for final
11 hearing at the time of sentencing, non-jury, and we
12 would try to resolve it before then.
13      THE COURT: All right.
14      MS. HARDWICK: And, Your Honor, that is okay
15 with us. It is not part of the actual plea agreement,
16 and Mr. Harmon and I agree that is a separate
17 proceeding.
18      THE COURT: All right. But the information
19 does contain a forfeiture allegation?
20      MS. HARDWICK: It does.
21      THE COURT: And you understand that, Mr.
22 Shoemaker?
23 A  Yes, sir.
24      THE COURT: So that issue will be resolved at
25 the time of sentencing?

Page 25

1      MS. HOLMES: Yes, sir.
2      THE COURT: Or perhaps earlier?
3      MS. HOLMES: Yes, sir.
4      THE COURT: All right. Mr. Shoemaker, to the
5 charge against you as we have discussed at length, how
6 do you plead?
7 A  Guilty.
8      THE COURT: Mr. Shoemaker, the Court finds
9 that you are fully competent and capable of entering an
10 informed plea, that you are aware of the nature of the
11 charge against you and the consequences of your plea. I
12 further find that your plea of guilty is a knowing and
13 voluntary plea supported by an independent basis in fact
14 containing each of the essential elements of the
15 offense.
16      Your plea is therefore accepted, and you are
17 now adjudged guilty of the count against you as
18 contained in the felony information.
19      I'm going to order that you be released under
20 the same conditions previously imposed on you.
21      Sentence will be set at a later date.
22      MS. HOLMES: Thank you, Your Honor.
23      THE COURT: Thank you. We're in recess.
24      (Whereupon, the proceedings were concluded.)
25           * * * * * * * * *

Page 26

1

2                    COURT REPORTER'S CERTIFICATE

3

4          I certify that the foregoing is a correct

5   transcript from the record of proceedings in the

6   above-entitled matter as prepared by me to the best of

7   my ability.

8

9          I further certify that I am not related to any

10  of the parties hereto, nor their counsel, and I have no

11  interest in the outcome of said cause.

12

13         Dated this 16th day of March 2007.

14

15                    /s/  Mitchell P. Reisner
                      MITCHELL  P.  REISNER,  CM, CRR,
16                    Official US Dist. Court Reporter
                      Registered Professional Reporter
17                    Certified   Real-Time   Reporter

18

19

20

21

22

23

24

25

# ATTACHMENT  F

1          IN THE UNITED STATES DISTRICT COURT

2         FOR THE MIDDLE DISTRICT OF ALABAMA

3                  SOUTHERN DIVISION

4

5  UNITED STATES OF AMERICA

6     vs.                    CR NO:  05cr-153-MEF

7  AL RAY SHOEMAKER,

8

9                * * * * * * * * * *

10                  SENTENCE HEARING

11               * * * * * * * * * *

12          Before the Honorable Mark E. Fuller,

13             United States District Judge, at

14         Montgomery, Alabama, on February 7, 2006

15               * * * * * * * * * *

16

17

18

19  APPEARANCES:

20  FOR THE GOVERNMENT: Tommie Brown Hardwick and John T. Harmon,
                        Assistant United States Attorneys
21
    FOR THE DEFENDANT:  David F. Holmes,
22                      Attorney at Law

23

24

25

2

1              (The above case coming on for hearing at Montgomery,

2     Alabama, on February 7, 2006, before the Honorable Mark E.

3     Fuller, United States District Judge, the following proceedings

4     were had commencing at 10:25 a.m.:)

5              THE COURT:  For the record the Court will next call the

6     case of Al Ray Shoemaker.  Are we ready to proceed in the case

7     of United States of America versus Al Ray Shoemaker, case number

8     05cr-153, United States District Court for the Middle District

9     of Alabama, Southern Division?  Is the United States prepared,

10    Ms. Hardwick?

11             MS. HARDWICK:  Yes, Your Honor

12             THE COURT:  Is the defense prepared this morning,

13    Mr. Holmes?

14             MR. HOLMES:  Yes, Your Honor.

15             THE COURT:  Are we ready to proceed?

16             MR. HOLMES:  Yes, Your Honor.

17             THE COURT:  I have reviewed the presentence report of

18    investigation and it appears that there are no objections that

19    have been entered on behalf of the presentence report for the

20    benefit of Mr. Shoemaker.  Mr. Holmes, are there my other

21    objections that the Court needs to be aware of today?

22             MR. HOLMES:  No, Your Honor.  There were some minor

23    corrections that I forwarded to Mr. Mathis and he revised it

24    prior to the final report.  There were some minor discrepancies

25    but they have been corrected.

3

1       THE COURT:  If you would, would you and your client

2   approach the podium.

3       MR. HOLMES:  Your Honor, if I may, Mr. Shoemaker asked

4   me as we sat down did you call his last name.  He has hearing

5   aids in both ears, he did not hear.  He heard Al Ray but did not

6   hear Shoemaker, so if there's some confusion at some point in

7   time it's due to his hearing.

8       THE COURT:  Mr. Shoemaker, if there's at any time an

9   inability for you to hear what the Court is saying to you, if

10  you would indicate such so that I can make sure that you clearly

11  understand what is going on today.

12      THE DEFENDANT:  Yes, sir.

13      THE COURT:  Mr. Shoemaker, today the Court will

14  determine a reasonable sentence in your case by considering the

15  United States Sentencing Guidelines which were promulgated

16  pursuant to the Sentencing Reform Act of 1984, and which are now

17  advisory, and by considering the factors set forth in 18 United

18  States Code Section 3553(a).  It appears after the Court's

19  review of the file in this case that you and your attorney have

20  reached a plea of guilty and an agreement with the United States

21  pursuant to the terms of Rule 11(c)(1)(C) of the Federal Rules

22  of Criminal Procedure.  Is, in fact, that correct?

23      MR. HOLMES:  That's correct, Your Honor.

24      THE DEFENDANT:  Yes, sir.

25      THE COURT:  Ms. Hardwick, if I could have either you or

4

1   Mr. Holmes state for the record the terms of the plea agreement
2   for the Court.

3           MS. HARDWICK:  I will state them for the Court, Your
4   Honor.  Your Honor, in the plea agreement Mr. Shoemaker was
5   originally charged in an indictment along with two
6   co-Defendants.  The plea agreement is an information guilty plea
7   to another charge, which was under 21 United States Code Section
8   841(f)(1), which is wrongful distribution or possession of a
9   listed chemical while aiding and abetting other persons.

10          The government's provision within this (c)(1)(C) plea
11  agreement is that the government would agree to dismiss the
12  indictment as it relates to Mr. Shoemaker because the two
13  co-Defendants are still pending.  The government has also agreed
14  should the government file a motion for downward departure that
15  he would be sentenced to not less than three years nor more than
16  five years, which is a statutory maximum under 841.  The
17  government also agreed that he should receive acceptance of
18  responsibility, which the motion the government has filed,
19  document number 73, so that he receives the additional one point
20  for acceptance of responsibility.

21          The parties also agree that no other motions would be
22  filed and if any other motion were to be filed that the plea
23  agreement would become void.  The substantial assistance
24  provision provided in the plea agreement did include, quote,
25  that Mr. Shoemaker provide substantial assistance.  As the Court

5

1   has probably noted, the government did not file a motion and

2   would request that Mr. Shoemaker be sentenced at the 60 months.

3   That is based on the government and the case agent's conclusion

4   that substantial assistance was not provided by Mr. Shoemaker in

5   this case.

6          THE COURT:  Anything to add to what has been

7   represented, Mr. Holmes?

8          MR. HOLMES:  Judge, we frankly dispute the substantial

9   assistance.  We understand, and I fully understand the law with

10  regard -- that it's not within the province of the Court.

11  However, the plea agreement in itself says that the plea

12  agreement is 36 months to 60 months, and the plea agreement is

13  not void as long as the Court stays within that range.  So we

14  would submit that the Court is free within that range to enter

15  any sentence that it so chooses without abrogating the plea

16  agreement.

17         THE COURT:  Anything else?

18         MR. HOLMES:  That's all.

19         THE COURT:  Mr. Shoemaker, it's the obligation of the

20  Court based upon the type of plea agreement that you have

21  reached with the United States in this case to inform you

22  whether this Court is going to follow the terms of the plea

23  agreement and sentence you consistent with the terms of the plea

24  agreement or to afford you the opportunity to withdraw your plea

25  of guilty if I choose not to follow the terms of the plea

6

1  agreement.  It is the Court's intentions to sentence you in

2  accordance with the plea agreement that you have reached with

3  the government, and the Court therefore accepts the plea

4  agreement and the terms of the plea agreement that you have

5  negotiated pursuant to Rule 11(c)(1)(C) of the Federal Rules of

6  Criminal Procedure.  Now pending before the Court is the United

7  States' motion for reduction for acceptance of responsibility,

8  which is document number 73, for the third point application for

9  acceptance of responsibility under 3E1.1 of the United States

10 Sentencing Guidelines.  Any objections to that motion,

11 Mr. Holmes?

12        MR. HOLMES:  No, Your Honor.

13        THE COURT:  Without objection, that motion is granted.

14 And for the record that motion is document number 73.

15 Mr. Shoemaker, have you and your attorney had an opportunity to

16 review the terms and the content of the presentence report

17 before today's date?

18        THE DEFENDANT:  Yes, sir, I have read it.

19        THE COURT:  Do you have any objections to any of the

20 content of the presentence report?

21        THE DEFENDANT:  No, sir, I do not have any objections.

22        THE COURT:  Mr. Holmes, do you know of any objections

23 that you need to apprize the Court of?

24        MR. HOLMES:  With regard to the presentence report, no,

25 Your Honor.

7

1        THE COURT:  Mr. Shoemaker, there being no objections to

2   the presentence report, the Court adopts the factual statements

3   contained in the presentence report, with the specific findings

4   under the guidelines that the offense level is 29, the criminal

5   history category is I, the guideline sentence is 60 months, the

6   supervised release period is from two to three years, and the

7   fine range is from 15 thousand to one hundred 50 thousand

8   dollars.

9        MS. HARDWICK:  Your Honor?

10       THE COURT:  As has been stated, there is no motion for

11  a downward departure for substantial assistance that has been

12  filed by the government, and if there's anything that needs to

13  be heard on the record at this point in regard to the

14  government's either filing or having indicated that it could

15  file a 5K1.1 departure motion or having not filed one, I will

16  hear it at this time.

17       MS. HARDWICK:  Your Honor, from the government's

18  position if the Court would note that the original indictment

19  and the facts of the case would still call for the probation

20  officer under the proffer case to accurately calculate the

21  sentencing guidelines.  The government has already considered --

22  been very considerate to all of the Defendants in this line of

23  cases that we have had by allowing them to plead to an

24  information under a statute different from the original

25  indictment.

8

1          Under the original indictment Mr. Shoemaker would be

2     looking at a minimum of 87 months, a maximum of a hundred and

3     eight months.  Without Mr. Shoemaker doing anything for the

4     government or any investigative agency, the government gave him

5     the same consideration that they did for all of the other

6     Defendants who are similarly situated.  However, we gave them

7     again another opportunity to help themselves by providing

8     substantial assistance.  The government feels that to go below

9     the 60 months that the statute caps the plea that he did enter

10    under 841(f)(1) is to provide to Mr. Shoemaker more than other

11    Defendants would have gotten who did indeed provide substantial

12    assistance.  So for that reason the government did not file the

13    motion and would ask that the Court sentence him to the 60

14    months.

15          THE COURT:  You are saying that the custody provisions

16    require a minimum and a maximum term of 60 months?

17          MS. HARDWICK:  Under the statute because the guidelines

18    calculations accurately done is 87 to a hundred and eight, but

19    because of the nature of the plea it is to 841, the statute caps

20    them at five years.

21          THE COURT:  Correct.

22          MS. HARDWICK:  Which means that the Court would have to

23    sentence him to no more than that, so he's still going below the

24    statutory -- going below the guidelines calculation and the

25    government took that into consideration in allowing these pleas.

9

1          THE COURT:  Mr. Holmes, do you have anything to say?

2          MR. HOLMES:  Yes, sir, I do, by way of response.  I

3    can't let it pass without making very clear to the Court that

4    Mr. Shoemaker -- the criteria here is the substantial part of

5    substantial assistance.  We do not dispute, we did not -- we

6    even set it forth at the time that we would provide every bit of

7    assistance that we could.  We don't have the power to control

8    whether that's substantial or not.  In saying that, Your Honor,

9    I know that in many criminal cases, certainly cases dealing with

10   drugs that is heard.  However, in this situation it's

11   particularly more unique because of the fact that Mr. Shoemaker

12   is not even by these indictments part of the drug dealing

13   culture.  This charge is dealing with Pseudoephedrine,

14   specifically Psudo-60s that were bought from Paulk Company as

15   part of his normal grocery distributorship.  Now, that's not in

16   any way lessening the offense that was committed here to which

17   we have pled, but as far as him being able to make controlled

18   buys or doing undercover work, Mr. Shoemaker is just simply not

19   a very good candidate for that.

20          That being said, we extended the opportunity and offer

21   to the government through its agents to utilize Mr. Shoemaker's

22   facility, to set up recordings on his phones if they so chose,

23   to ask him to make any type of solicitations, either from other

24   stores they were investigating or what have you, and the

25   government -- in fact, we even knew of a specific store that we

10

1 felt like they wanted to investigate, and the government chose

2 not to take Mr. Shoemaker up on that offer.

3          In addition to that, and one of the first questions we

4 were asked is, there is one company in which Mr. Shoemaker on

5 one or two occasions made a purchase from, the only thing he

6 could come up with was the name USA.  After the plea, and

7 keeping in mind that these actions happened in 2002 or 2003,

8 after the plea Mr. Shoemaker went back into his records and went

9 into old Mastercard receipts and found the name, phone number

10 and address of that company and has supplied it to the agent.

11          The situation here is -- as far as being similarly

12 situated with the other Defendants, one other additional factor

13 is in this case is, in fact, that the Court has entered, and I

14 know anticipates the request that it be made final, a

15 preliminary entry of forfeiture.  Mr. Shoemaker has, in fact,

16 lost more and stands in a more severe situation than any of the

17 other Defendants similarly situated.  I would recall back to the

18 Court the specific evidence that was presented at the forfeiture

19 hearing that the total amount of profit that Mr. Shoemaker made

20 was five hundred and 55 dollars on the total which was alleged

21 to be sold.

22          I realize the government has the right to call these

23 things substantial or not substantial.  I have always

24 maintained, and unfortunately in the minority, that substantial

25 is in relationship to the Defendant's ability to perform, not

1  some greater issue.  And I realize that's not the law and I

2  realize I have not been successful in that position, but that

3  being said, this Court has the power to sentence Mr. Shoemaker

4  between three and six years -- I mean three and five years.  I

5  believe based on my information and belief each and every other

6  Defendant that has been sentenced in these similar cases that

7  Ms. Hardwick had referred to has received a sentence of 36

8  months.  I don't think any of them have received a fine as

9  substantial as a hundred to a hundred and 75 thousand, which is

10 the ultimate impact of this forfeiture based on the stipulated

11 figures that were given at the forfeiture hearing between

12 Mr. Harmon and myself as to the value of Mr. Shoemaker's

13 interest.  Because of that, I would ask based on the nature of

14 the situation, based on the broader circumstances and the other

15 punishment that's already inflicted on Mr. Shoemaker, that Your

16 Honor impose a sentence of 36 months.

17         MS. HARDWICK:  Your Honor, may I respond to that?

18         THE COURT:  You may.

19         MS. HARDWICK:  Your Honor, at least one case that this

20 Court has sentenced, we have had one person who actually

21 reported information that led to an affidavit for a search

22 warrant that led to a felony arrest of another person in that

23 area.  If all a person has to do in any of these cases for

24 substantial assistance is provide the name of a company which

25 anyone can go to YAHOO! and get or the yellow pages and get and

12

1   the government is then now forced to file a motion for

2   substantial assistance, then the operations of OCDEF, the drug

3   task force, none of them would be affected, because every

4   Defendant would walk in and repeat something they have read in

5   the paper or something they have heard on the news or they have

6   read in the paper.

7          Good faith effort was removed out of the guidelines

8   some years ago because the government said good faith effort was

9   not good enough, it has to be substantial assistance.  From the

10  debriefing on Mr. Shoemaker has not provided substantial

11  assistance.  The substantial assistance had already been

12  provided by another Defendant, that's the nature of what happens

13  when you come in later.  Also, the amount that he has lost, he

14  has lost no more than the other Defendants who had businesses

15  that the forfeiture section of our office has sought forfeitures

16  of.  So he is not any differently -- what he is asking the Court

17  to do is give him more for doing less.

18         THE COURT:  Anything else?

19         MR. HOLMES:  Just briefly, Your Honor.  I am not going

20  to belabor the point with the Court but I would submit if this

21  company could have been found on YAHOO! or otherwise they would

22  not have expressed such an interest to my client.  As far as

23  coming in late, we were one of the first people to come in and

24  tender this proffer.  Beyond that, we don't have any further

25  argument, Your Honor.

13

1          THE COURT:  Well, the Court is aware that a substantial

2     assistance motion pursuant to Section 5K1.1 of the sentencing

3     guidelines is a prerogative that has to be initiated by the

4     United States, regardless of the circumstances of why the United

5     States chooses to file such motions or chooses not to file such

6     motions.  Congress has stated that that is the prerogative

7     available only to the United States, and not available to the

8     Court, and the Court respects that prerogative.

9          In reading the un-objected to portions of the

10    presentence report, the Court notes that between April 10, 2003

11    and May 1st, 2003, Mr. Shoemaker sold a quantity of what has

12    been referred to as Maximum Psudo-60s, in a quantity of in

13    excess of one hundred bottles while at the same time raising the

14    price on those bottles by more than 20 percent.  It's clear to

15    the Court that Mr. Shoemaker had an understanding of what was

16    being done with those drugs, and whether or not he could have

17    provided information which would have led to the eradication of

18    the production of methamphetamine in that part of the state is a

19    decision that has to be made and initiated by the government,

20    and this Court respects that obligation.  Do either you or your

21    client have anything to say in mitigation or otherwise before

22    the Court pronounces its sentence in this case, Mr. Shoemaker?

23          MR. HOLMES:  Your Honor, may I inquire of the Court, at

24    the end, and if that was in the presentence report I apologize

25    for missing it, the raising of the price.  I believe the price

14

1   was pretty well the same throughout this.  I think these were

2   sold for nine to ten dollars.  And referring back to the

3   discovery that this Court took into evidence that it had a

4   suggested retail price on it from Paulk, and he sold those items

5   within that area.  Now, we do not dispute that he should have

6   known what this was being used for, but I do not want the Court

7   being under the misimpression that he was trying to make an

8   artificial profit as a result of this being in a drug

9   operation.  The profit that he made was based on what he

10  standard made in the store based on the suggested retail prices

11  provided by Paulk.

12          THE COURT:  I am reading from the presentence report,

13  specifically between paragraphs 11 and 14, where it says that on

14  April the 10th an informant went into Al's BP and purchased ten

15  bottles of Maximum Pseudo-60s for nine dollars per bottle.  On

16  May the 1st, that same informant went back and purchased 31

17  bottles of Maximum Pseudo-60s for 11 dollars per bottle.  That's

18  clear to me that the price of these controlled substances was

19  increased and Mr. Shoemaker knew what the purpose of the

20  purchase and the quantities that were being purchased of these

21  quantities were for.

22          MR. HOLMES:  Okay, sir.  I do believe that the Court

23  will find that there was an increase in the suggested retail

24  price by Paulk during that same period of time.  Your Honor, we

25  are not disputing that he should have known that this was being

15

1   used, I just was trying to clarify that fact.

2         THE COURT:  And I am not trying to make personal

3   judgments here, and the supplier is not on trial, it's just

4   Mr. Shoemaker that's before me.

5         MR. HOLMES:  Yes, sir, I understand.

6         THE COURT:  Anything else that needs to be said in

7   mitigation or otherwise before the Court pronounces sentence?

8         MR. HOLMES:  Your Honor, Mr. Shoemaker would like to

9   address the Court.

10         THE COURT:  You certainly may, Mr. Shoemaker.

11         THE DEFENDANT:  I -- when you are guilty, you don't

12   have much to say.  And I am guilty of not knowing when I should

13   have known.  I am guilty of playing and not attending to my

14   business.  I'm sorry, and I regret the things that happened back

15   during that 2003 period.  I am ultimately responsible for

16   everything that went on in my business then and now.  I humbly

17   and respectfully ask you to have mercy today on your decision.

18   And I pray that justice will prevail.  And I thank you, Judge.

19         THE COURT:  Anything else?

20         MR. HOLMES:  Nothing further, Your Honor.

21         THE COURT:  Anything from the United States?

22         MS. HARDWICK:  Your Honor, I feel the need to read this

23   section of the taped statement for the record because of some of

24   the things that have just been said, and to support the Court in

25   its conclusion that the price went up.  This is from a taped

16

1   transcript that was provided in discovery, Bates stamps number

2   79 through 86, and beginning on page -- Bates stamp number 82 in

3   the middle, it begins with Mr. Shoemaker's stating yeah, but I

4   got the price. We went up to 10 dollars a bottle. I tell you,

5   could I see -- I can see all I -- I can sell all I can get. The

6   person who is labeled BB, who is Brenda Barnett, the

7   confidential informant, who says uh-huh. Mr. Shoemaker then

8   says so there's really no need of cutting the price, if I can't

9   even keep enough of them. The confidential informant Brenda

10  Barnett says did I ask him to cut any prices on anything?

11  Mr. Shoemaker, oh, I thought you said you did. That clearly

12  says that he was going up on the price. He did not mention any

13  manufacturer or anything, and to say that he should have known,

14  it's clear from this that he did know.

15          THE COURT: Anything else, Mr. Holmes?

16          MR. HOLMES: No, Your Honor.

17          MS. HARDWICK: No, Your Honor.

18          THE COURT: Mr. Shoemaker, the sentence will now be

19  stated but you will have a final chance to make legal objections

20  before the sentence is imposed. Based upon the advisory

21  guideline range and the applicable statutory factors it is the

22  judgment of this Court that you, Al Shoemaker, be committed to

23  the custody of the Federal Bureau of Prisons to be imprisoned

24  for a total term of 48 months. In light of the Court's entry of

25  the preliminary order of forfeiture and based upon your

17

1   incarceration and subsequent inability to benefit from either

2   your ownership in the business directly or your ability to

3   directly be employed in the business for the next 48 months, the

4   Court waives the imposition of a fine.

5          THE DEFENDANT:  Thank you, Your Honor.

6          THE COURT:  However, you shall pay to the United States

7   District Court Clerk a special assessment fee of one hundred

8   dollars, which is due immediately.  The Court finds that there

9   is no identifiable victim who incurred a financial loss as a

10  result of this offense.  Upon release from imprisonment you

11  shall be placed on supervised release for a term of two years.

12  Within 72 hours of release from custody you shall report to the

13  probation office in the District to which you are released.

14  While on supervised release you shall comply with the mandatory

15  and standard conditions of supervised release on file with this

16  court.

17         The Court also orders the following special

18  conditions:  You shall cooperate in the collection of DNA as

19  directed by the probation officer.  You shall submit to a search

20  of your person, residence, office or vehicle pursuant to the

21  search policy of this Court.  You shall surrender to the

22  institution designated by the Federal Bureau of Prisons on or

23  before 2:00 p.m. on Friday, March 24, 2006.

24         The Court finds that the sentence that has been stated

25  is a reasonable sentence, although it is lower than the

18

1    statutory sentence of 60 months.  The Court finds that it is a

2    reasonable sentence based upon the need for the sentence that

3    has been imposed to reflect the seriousness of the offense and

4    to promote respect for the law and to provide just punishment

5    for the offense, to afford adequate deterrence to criminal

6    conduct, and to protect the public from any further crimes of

7    you, Mr. Shoemaker.  Additionally, the Court finds that any

8    lesser sentence would be insufficient to accomplish the purposes

9    set forth in 18 United States Code Section 3553(a)(2).  The

10   Court understands that there has been a waiver to your right of

11   appeal or collateral attack, but as to the sentence that has

12   been imposed are there any objections to the sentence or to the

13   manner in which the Court pronounced it?  For example, do you

14   have any objections to the Court's ultimate findings of fact or

15   conclusions of law?

16          MR. HOLMES:  We have no objections, Your Honor.

17          THE COURT:  Any objections from the United States?

18          MS. HARDWICK:  No, Your Honor.

19          THE COURT:  Mr. Shoemaker, the sentence is ordered

20   imposed as stated and the Court will now address your right of

21   appeal.  Pursuant to the plea agreement you have waived some or

22   all of your right to appeal the sentence.  Such waivers are

23   generally enforceable, but if you believe that your waiver is

24   not enforceable, you may present that theory to the appropriate

25   appellate court.  In order for you to preserve any appeal rights

19

1   that you believe remain in this case you may -- or you should

2   and are required to present your appeal to this Court or to the

3   appropriate appellate court within ten days after the Court

4   enters its written judgment in this case.  I am not encouraging

5   you to appeal or not to appeal, Mr. Shoemaker, it's my policy in

6   every case to inform you of your right regarding appeal to the

7   extent that you have those rights remaining.  Do you understand

8   those rights?

9            THE DEFENDANT:  Yes, sir, I do.

10           THE COURT:  Do you have any question regarding your

11  right of appeal to the extent that they remain?

12           THE DEFENDANT:  I have no questions.

13           THE COURT:  Mr. Holmes, do you have any questions

14  regarding your client's right of appeal to the extent that they

15  remain?

16           MR. HOLMES:  No, Your Honor, I do not.

17           THE COURT:  Anything from the United States?

18           MS. HARDWICK:  No, Your Honor.

19           MR. HARMON:  Your Honor, on behalf of the United States

20  regarding the forfeiture issue, this Court has earlier entered a

21  preliminary order of forfeiture, that's document number 76 I

22  believe in the record.  Your Honor, we would ask the Court at

23  this time to make that document final as to Mr. Shoemaker.

24  Further ask the Court to make the order of forfeiture a part of

25  its oral pronouncement of sentence and further direct the clerk

20

1   to include the forfeiture on the written judgment.  And Your

2   Honor, I might add, although the order is final as to Mr. -- as

3   to the Defendant, it is not a final order as to other

4   third-parties who will have an opportunity to bring forth their

5   interest, if any, before the Court in a further proceeding.

6           THE COURT:  Do you understand what has been moved by

7   the United States, Mr. Holmes?

8           MR. HOLMES:  Yes, Your Honor, and Mr. Harmon and I have

9   discussed this prior to the proceeding.

10          THE COURT:  Any objection to the request?

11          MR. HOLMES:  No, sir.

12          THE COURT:  As to the government's request for a final

13  order of forfeiture as to the interest that Mr. Shoemaker has in

14  either Al's BP or in the corporation that owns the real estate

15  subject to the forfeiture, that motion is granted and the Court

16  will enter the appropriate final order of forfeiture and make it

17  a part of the sentence in this case today.

18          MR. HOLMES:  Your Honor, if I may be heard.  The

19  corporation does not own the real estate.  Mr. Al Shoemaker

20  individually and Mrs. Sarah Shoemaker jointly and severally own

21  it.

22          THE COURT:  To the extent that there's any other

23  corporate interest, I am just saying as to the real estate, I

24  wasn't sure from reading the presentence report if the

25  Shoemakers owned the property or if it was owned by the

21

1    corporation that's designated in the presentence report that I

2    believe was designated as Expresso Incorporated.

3         MR. HOLMES:  Yes, sir.

4         THE COURT:  But to the extent that Mr. Shoemaker has

5    any interest in that property as of the conclusion of this

6    hearing, the final entry of the order of forfeiture will be

7    made.  Anything else that we need to take up, either from the

8    United States or the Defendant in this case?

9         MS. HARDWICK:  Your Honor, the government will file a

10   written motion to dismiss the indictment just pertaining to

11   Mr. Shoemaker asking that the Court remain -- remain the two

12   co-Defendants.

13        THE COURT:  You wish to do that in writing?

14        MS. HARDWICK:  Yes, Your Honor.

15        THE COURT:  Any objection?

16        MR. HOLMES:  None, Your Honor.

17        THE COURT:  Mr. Shoemaker, I wish you the best of

18   luck.  I am going to require that you be present during the

19   sentencing of the next Defendant, Mr. Strickland, who is set for

20   sentencing.  And I will tell you on the record that

21   Mr. Strickland is being sentenced because he was in possession

22   of methamphetamine with his seven year old daughter in your area

23   of Geneva County in the Southern Division of the Middle District

24   of Alabama.  I want you to sit here and listen to what happens

25   when things happen in your business that you should clearly have

22

1  known about, and the consequences it has on people's lives.  You

2  are also ordered to see Mr. Mathis before you leave the

3  courthouse today, and I wish you the best of luck.

4        THE DEFENDANT:  Thank you, Your Honor.

5        MR. HOLMES:  Thank you, Judge.

6        THE COURT:  This matter will be in recess.

7        (At which time, 10:55 a.m., the hearing was adjourned.)

8

9                    * * * * * * * * * *

10                COURT REPORTER'S CERTIFICATE

11        I certify that the foregoing is a correct transcript

12  from the record of proceedings in the above-entitled matter.

13        This 31st day of January, 2007.

14
                              /s/ James R. Dickens
15                            Official Court Reporter

16

17

18

19

20

21

22

23

24

25

# ATTACHMENT   G

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA

AL RAY SHOEMAKER,

           Petitioner

Vs.                                    CASE NO. 1:07CV112-MEF

UNITED STATES OF AMERICA

           Respondent

_____

AFFIDAVIT OF DAVID F. HOLMES IN RESPONSE TO
DEFENDANT'S MOTION UNDER 28 U.S.C. 2255

COMES NOW DAVID F. HOLMES, and files this affidavit in response to the

Defendant's Motion under 28 U.S.C. 2255 pursuant to this court's order of February 7,

2007 and would state:

1.     My name is David Franklin Holmes and I was the attorney of record for

       Al Ray Shoemaker in the above styled cause.

2.     Mr. Shoemaker's motion represents that I was aware of his prior surgery

       for Diverticulitis.

3.     I have no independent recollection of being informed of Mr. Shoemaker's

       prior surgery and I have nothing in my file that reflects being informed of

       same.

4.     However, even if I was informed of Mr. Shoemaker's prior surgery, I

       would not have connected this to a likelihood of cancer since I have

       absolutely no knowledge of the correlation of a prior surgery for

       diverticulitis and the subsequent onset of cancer.  Furthermore, I  would

not be inclined to have a person examined for an illness that was

supposedly cured over 2 years prior to his sentencing.

5.    Prior to Mr. Shoemaker's plea he was facing a total sentence of 108 to 131

months had he been convicted as charged under the indictment of this

case.

6.    Prior to the plea and again prior to the sentencing, the Defendant, with my

advice and assistance, attempted to render substantial assistance to the

government including extensive research to find the location of one of the

wholesalers who sold the Defendant the pseudophedrine (i.e. "pseudo

60's") for which he was charged. This was information that the arresting

officer (Tony Helms, Geneva County Sheriff's Dept.) advised that they

were very interested in.  Notwithstanding this effort, and the supplying of

this information, and even after the offer to allow his store to be used for a

sting operation, the officer failed to inform such activity to the Assistant

U.S. Attorney and she vigorously fought Mr. Shoemaker's receiving any

sentence less than 60 months.  While the Defense fought for nothing more

than 36 months, this court sentenced the Defendant to 48 months. I further

believe that the actions of the local authorities in not advising the

prosecution of Mr. Shoemaker's assistance (while likely unknown to the

U.S. Attorney's office) were based on factors outside the parameters of the

instant case.

7.    I do recall telling Mr. Shoemaker to inform the probation and parole office

of any possible health issues that he had; and I note in reviewing the pre-

sentence report, that there is no reference from Mr. Shoemaker regarding his prior surgery for diverticulitis.

8.      Prior to his sentencing, Mr. Shoemaker asked whether I could apply to have him  sent to Pensacola for his sentence for purposes of  a drug program because he thought it might shorten his sentence.  However, at no time did Mr. Shoemaker ever advise me that he had a drug or alcohol problem; in fact, to the contrary he advised that he had never used drugs at all, did not drink at the time, and had drunk only  somewhat in the distant past.

9.      Mr. Shoemaker did contact me and was upset that I did not pursue this course of treatment advising that he would be able to get out much sooner had he been admitted to a drug treatment facility.  He asked that I pursue it further and I did by contacting Mr. Doug Mathis with probation and parole to investigate his entering a program.  However, shortly thereafter, Mr. Shoemaker was relocated from Maxwell due to his current illness.

10.     Since the defendant's illness was diagnosed as terminal I have attempted assist him in obtaining a compassionate discharge.

11.     There is no question that his condition is terminal and that his health will steadily decline.  However, the Bureau of Prisons and, more specifically his treating physician, appears to have a standard that the Defendant  must have a life expectancy of 6 months or less before he is eligible to receive a compassionate discharge.  I have not found any authority for this principle and believe that such an application denies the Defendant his due process.

12. I very much feel that the physical and psychological trauma of the defendant's illness coupled with the fact that he apparently will spend the remainder of his life incarcerated constitutes a severe miscarriage of justice and quite likely constitutes cruel and unusual punishment for the Defendant's offense.

13. While, I feel that I have competently and professionally represented the Defendant, I do feel that he should have some relief from his current sentence.

14. FURTHER AFFIANT SAYETH NOT.

DAVID F. HOLMES

STATE OF ALABAMA
COUNTY OF GENEVA

BEFORE ME appeared David F. Holmes, to me well known, who being duly sworn, deposes and says that the foregoing is true and correct to the best of his knowledge.

Dated this 16th day of February, 2007.

Notary Public

My Commission expires:
6-3-2008